# REPORTS

## OF

# CASES ARGUED AND DETERMINED

### AT THE JANUARY TERM, 1868.

## GILMER'S LEGATEES *vs.* GILMER'S EXECUTORS.

[BILL IN EQUITY TO OBTAIN JUDICIAL CONSTRUCTION OF WILL.]

1. *Bequest; what is general legacy.*—A bequest in these words, "I give to my brother, T. L. G., twenty thousand dollars in Confederate States bonds," is a general, and not a specific legacy, even though the testator have at the time of making the will, bonds of that class, in quantity equal to, or greater than the legacy given. This fact may be ground for an argument, and combined with other circumstances, may lead to the conclusion that a specific legacy was intended, but can not of itself change the class of legacies from general to specific.

2. *Same ; in Confederate bonds.*—The said bonds of the Confederate States, having become utterly worthless, the legacy given in said clause of the will fails, and the legatee takes nothing on account thereof.

3. *Same ; general and specific.*—A bequest to E. G., of a specified amount of certain bonds, which the testator held, is a specific legacy, and should be paid out of bonds of the estate of the specified character, without abatement. But a bequest to one "of five thousand dollars in railroad bonds," is a general legacy, and if there is any deficiency of the kind of bonds, must be supplied out of the general assets of the estate.

4. *Same ; ademption of.*—Where the testator gave to a legatee under the will, a certain amount in notes, in which said legatee's note was included, and at the time of making the will the testator held the note on said legatee, and afterwards and before his death, gave it to him, the legacy will be abated by the amount of the note thus given to the legatee.

5. *Same.*—A bequest to P. O. H., "of ten thousand dollars in notes, or Confederate States bonds, at the option of my executors," vests in the executors a discretion, which the courts will not interfere with, and Confederate States bonds being worthless, such legacy must fail at the option of the executors.

Gilmer's Legatees v. Gilmer's Executors.

6. *Same.*—A bequest to J. W. A., " of six thousand dollars, to be taken in notes and Confederate States bonds, proportioned, at the discretion of my executors," is to be paid in notes to such an extent as the executors may determine.

7. *Same.*—A bequest for the erection of monuments to the memory " of Gen. S. J., of Va. and Col's. T. C. and B., of Ga." is valid ; but a bequest for "assisting to raise *monuments* to the memory of *all* other officers and soldiers from the State of Alabama, who distinguished themselves, or those who have died from wounds, or were killed in defense of their country, in the present war between the United States and the Confederate States," is void on account of the impossibility of its performance.

APPEAL from the Chancery Court of Montgomery.
Heard before the HON. N. W. COCKE.

THE bill in this cause was filed on the 12th of April, 1866, by Benajah S. Bibb, and Jefferson Falkner, as executors of the last will and testament of William B. S. Gilmer, deceased, and sought a judicial construction of some of the clauses of the will of said testator. Said Gilmer died about the 5th day of January, 1865, at his residence in Chambers county in this State, having made and published his last will and testament, which was admitted to probate in the probate court of Chambers county, on the 24th March, 1865, and letters testamentary were duly issued by said court to the above named executors ; the other persons mentioned in said will as executors, having declined to act. The clauses of said will, which it is necessary to notice, are the following : " Item 2d, I give and bequeath to my beloved wife, Elizabeth Gilmer, * * * * * three hundred shares of the stock which I hold in the Montgomery and West Point Railroad, *and twenty-five thousand dollars of the bonds which I hold in the railroad companies, payable at the Georgia Railroad Bank, or at the Central Bank of Montgomery, Alabama,*" &c. "Item 7th, I give to my brother Thomas L. Gilmer, twenty thousand dollars in Confederate States bonds." " Item 8th, I give to my sister-in-law, Eliza F. Gilmer, five thousand dollars in railroad bonds." " Item 12th, I give to my friend William J. Adams, twelve thousand dollars in notes, in which his own is to be included." "Item 13th, I give to my friend

P. O. Harper, ten thousand dollars in notes, or in Confederate States bonds, at the option of my executors hereinafter named." "Item 16th, I give to my friend John W. Akers, for the use of his three children, by his first marriage, six thousand dollars to be taken in notes, and Confederate States bonds, proportioned, at the discretion of my executors."

All the legatees and devisees under said will were made parties defendant to said bill, as also were the heirs and distributees of said Gilmer, who were not legatees or devisees under the will. It was admitted that there were but thirty-four thousand dollars of railroad bonds left by said testator, and that the testator bequeathed forty thousand of such bonds. The other facts of the case will sufficiently appear from reading the opinion of the court.

The cause was submitted to the chancellor, at the fall term, 1866, of said chancery court, on the pleadings, testimony, and admissions of the parties, and decrees *pro confesso*, and on the 25th May, 1867, he rendered his decree. From this decree, the appellants, who are legatees under said will, appealed to this court, and assigned the following errors:

1. The court below erred in the decree rendered.

2. The court erred in holding each of the legacies given to the appellants by the will of testator, W. B. Gilmer, to be specific.

3. The court erred in holding that legacies of the railroad bonds to Spense and Muse, were specific.

4. The court erred in the instructions given to the executors to execute and carry out the said will, as shown by the decree rendered.

5. The court erred in deciding that the legacy to E. H. Muse should not be paid, on the ground that there were not enough railroad bonds to pay him, but if the legacies of so many dollars in railroad bonds to Mrs. Gilmer, Muse, and Spence, were specific, then if the testator did not have enough to pay all, they should have proportionately abated.

Thomas L. Gilmer appeared by counsel, and assigned upon the record the following errors:

1. The court below erred in its final decree, as to said Thomas L. Gilmer.

2. It erred as to said Thomas L. Gilmer, in the construction of said last will and testament, and in the directions given in its said decree.

W. H. BARNES, for appellants.—1. The questions raised by this record, so far as appellants are concerned, are principally whether the legacies given to appellants are specific or general. The general words used in the will are as follows : "I give to my friend —— ten thousand dollars in Confederate treasury-notes." We contend that the legacies in such words as above are not specific, and rely on the following authorities.—*Tift v. Porter*, 4 Selden's N. Y. Rep. 516 ; *Davis v. King*, 1 Iredell's Eq. Rep. 309 ; Roper on Legacies, 206, 207, 212 ; *Sibly v. Perry*, 7 Veasy, Jr. 520 ; *Wilson v. Brownitt*, 6 Veasy, Jr. 180 ; *Robinson v. Adison*, 2 Beav. 515 ; Bouv. Dictionary, Vol. 2, p. 17 ; *Perry v. Maxwell*, 2 Dev. Eq. 488 ; *Giddings v. Stewart*, 16 N. Y. ; *Myer v. Myer*, 33 Ala. 85. The courts always hold legacies general instead of specific, whenever it can be done without doing violence to the will ; in other words, they incline to favor the holding of legacies general rather than specific. The words used in the legacies given to these appellants, do not specify and point out any particular property, so as to distingish it from all others. In the case of the railroad bonds, it was shown that the testator had only thirty-four thousand dollars in bonds, when the amount given away was forty thousand. This is an evidence to show that the legacies given in the said bonds were not specific. There are no words going to show any description of the bonds, such as " my bonds," or " the bonds I possess," but may include bonds which the testator may afterwards acquire, as well as any that he then had.

2. On the ademption of a legacy given to a child, and afterwards an advancement to the amount so given, there seems to be a distinction between bequests to children and strangers. The law makes a presumption of satisfaction against the child, but it does not against a stranger.—16 N. Y. (2 Smith's) Rep. 34.

RICE, SEMPLE & GOLDTHWAITE, for Thomas L. Gilmer.—
1. "The leading principle of the case, (like the present) is,
that when the testator bequeaths a sum of money, or,
which is the same thing, a life annuity, in such a manner
as to show a separate and independent intention that the
money shall be paid to the legatee at all events, that inten-
tion will not be permitted to be overruled, merely by a
direction in the will that the money is to be raised in a
particular way, or out of a particular fund."—*Pierpont v.
Edwards*, 25 New York Rep. 131.

"It may be difficult in some of the reported cases to dis-
cover the evidence of that separate and independent inten-
tion which the court has ascribed to a testator rather than
allow the objects of his bounty to be disappointed; but I
understand *the principle of all the decisions* to be that which
is relied upon by Sir T. Plumer, in *Mann v. Copland*, 2
Madd. 223, and is expressed, I think, with sufficient dis-
tinctness by Lord Macclesfield, in *Savile v. Blacket*, 1 P.
Wms. 778."—*Dickin v. Edwards*, 4 Hare, (30 Eng. Chancery
Rep.) 276.

In arriving at this intention, the court is authorized to
look at the circumstances attending the execution of the
will, and to put itself as far as possible in the position in
which the testator then was, and to view every thing which
had any relation to the will, as he then viewed it.

Amongst other things, the court must notice the follow-
ing, that the testator was an aged and wealthy man, with
an aged wife, without any descendant or hope of descend-
ant; that at the time he made the will, he had an evident
faith in the value of Confederate issues; that he did not
contemplate their becoming valueless; that Thomas L.
Gilmer was *the brother and heir* of the testator; that beyond
doubt, the testator had *a positive and independent intention*
that this *brother and heir* should have and enjoy the sub-
stance of the testator's bounty, at all events, "the particu-
lar property out of which it was to be paid being *a secon-
dary thought.*"—*Mann v. Copland*, 2 Madd. 226.

J. FALKNER, *contra.*—1. The testator's estate consisted in
a great degree in Confederate States bonds and notes of

the Confederate States. These securities, at the date of the will, were of very considerable value, and as the *intention* of the testator is to govern in the construction of the will, and that intention is to be ascertained from the circumstances surrounding him at the time, as well as from the will itself, that class of legacies payable in those securities are specific and can not be paid in anything else, without defeating what was his evident intention.

2. The case of *Mann v. Copland*, 2 Maddox, 223, is very different from this case. In that case, the testator bequeaths the ten pounds, and then directs how it shall be paid; and if that fails, then to have two hundred pounds secured out of two thousand pounds, "navy," &c. The court there held, that it was the intention of the testator that the legatee should have the legacy, and that the manner of paying it was merely directed. But here the testator says, I give so much in certain funds, which he then had, and also had at the time of his death, so it would seem to have been his intention to have paid it in the specific funds mentioned and in nothing else. These funds were of value not only at the date of the will, but also at the date of his death. In the case of *Savile v. Blacket*, 1 P. Williams, 778, the fund failed entirely; but in this case, the Confederate securities, which are the specific legacies, were of value both at the date of the will and at the death of the testator, at which time the legacies took effect. The case of *Dickin v. Edwards*, 30 Eng. Ch. Rep. 273, is an authority in favor of the view taken by the chancellor in the court below, and does not support the argument of appellants.—*Tift v. Porter*, 4 Selden's N. Y. Rep. 516, is on the subject of specific and general legacies. It is, however, contended that the question did not really arise in that case, as it was not necessary to have been decided. It seems to me, however, that the opinion of the minority of the court is really the law upon the question presented. And I think that none of the cases on appellant's briefs are sufficient to overturn the opinion of the chancellor, especially when the twenty-third clause of the will is considered in connection with these several legacies. The case of *Myer v. Myer*, 33 Ala. 85, it seems to me, is an authority in

favor of the decision of the chancellor. It will be remembered, however, that in all the cases referred to by the counsel for appellants, the authorities do not apply in this case. Here the testator gives, say to Thomas L. Gilmer, twenty thousand dollars *in Confederate States bonds.* These bonds were of some value when the legacy vested, and the executors have all the time been ready to pay over the identical bonds left by testator, and are still ready, and they on their face purport to be $20,000, and certainly the executors cannot be required to go beyond the directions of the bequest. That these legacies are specific, see Leading Cases in Eq., vol. 2, part 1, pages 351 to 356 inclusive, (top page).

2. That the legacy to W. J. Adams is adeemed *pro tanto* by handing him his note.—See Leading cases in Eq., vol. 2, part 1, (top page,) 346 to 357; *Ashburn v. McGuire,* which is the leading case on this question ; see also same book, 356 ; *Walton v. Walton, Ex'r.,* 7 Johnson's Chancery Rep. 258.

A. J. WALKER, C. J.—The executors of William B. S. Gilmer, deceased, filed the bill in this case for the purpose of obtaining a construction of some of the clauses of the will of their testator. We will examine the legacies of controverted and doubted construction in classes, formed upon an identity of the questions involved.

1. The seventh item of the will affords an exact example of several legacies, all of which will be grouped into the class which we will first consider. The language of that item is as follows :   " I give to my brother Thomas L. Gilmer, twenty thousand dollars in Confederate States bonds." In this class are included the legacies to Jane Dozier and Sophia Ann Meriwether, and Sally Pyron and H. Powers, in the 10th item ; and the legacy to Elliott H. Muse, of "five thousand dollars in Confederate bonds," in the 20th item ; and to William D. McCurdy, of five thousand dollars in Confederate States bonds, in the 17th item. What is the construction of these bequests, and what is the duty of the executors in reference thereto ?

Legacies are general, demonstrative or specific, " and

each is distinguished from the other by the incidents which the law attaches to them respectively. A specific legacy is the bequest of a particular thing or money specified and distinguished from all others of the same kind. A demonstrative legacy is where the thing or money is not specified and distinguished from all others of the same kind, but a particular fund is pointed out for its payment. A general legacy is one of *quantity* merely, and includes all cases not embraced in the two other classes."—*Myer v. Myer*, 33 Ala. Rep. 85.

The question whether the bequest to Thomas L. Gilmer of "twenty thousand dollars in Confederate States bonds," is a specific or general legacy, will be resolved by an inquiry at first restricted to the legal effect of the language isolated from the context and unaffected by extrinsic circumstances, and then as influenced by the context and circumstances, which it is permissible to consider. Do the words then standing alone designate any particular bonds "specified and distinguished from all others," and do they therefore constitute a specific legacy? It is most obvious that they do not. A compliance with it is accomplished by the payment in any Confederate bonds, and there is no implication deducible from it that the payment should be in any particular bonds of the class. If a testator gives "my diamond ring," "my thousand dollars of stock," "my black horse," or "a thousand dollars contained in a particular bag," or "owing to me by a particular person," the thing given is individualized and specified from all others of the same class, and the legacies are specific. So here, if the legacy had been of twenty thousand dollars in my Confederate States bonds, or out of, or part of my Confederate States bonds, the legacy would have been specific. An extensive collation of the cases illustrating and sustaining this distinction will be found in the English notes to the case of *Ashburner v. McGuire*, 2 L. Cas. in Eq., 3 Am. Ed., m. p. p. 239, 242, and in the American Note, top p. p. 500, 506, and in 1 Roper on Legacies, m. p. p. 204, 214. Even though the testator have at the time of making the will stock, annuity, or other thing bequeathed in sufficient quantity, the legacy is not specific, where it is general in its terms,

Gilmer's Legatees v. Gilmer's Executors.

and the intention to make it specific is not otherwise shown.—See the English authorities collected in the English note to *Ashburner v. McGuire*, 2 L. Cas. in Eq., m. p. 240; 1 Roper on Legacies, m. p. p. 213, 214. A very strong case illustrative of this proposition is *Davis v. Cain*, 1 Iredell's Eq. 304, where a legacy of "twenty-five shares of the capital stock" of a bank was held general, notwithstanding the testator had the amount of stock in the bank. *Tift v. Porter*, 4 Selden, 516, is a case to like effect, holding that bequests in general terms by a testator having 360 shares in a bank, of 240 shares to one and of 120 shares to another, were general and not specific. We notice one other case on this point. In *Robinson v. Adison*, 2 Beavan, 515, a testator having $15\frac{1}{2}$ shares of a particular canal stock, bequeathed in general terms without referring in words to his stock, $5\frac{1}{2}$ shares to one, five shares to another, and five to another, and they were decided not to be specific bequests. There is a case, however, (*Jeffreys v. Jeffreys*, 3 Atkyn's, 120,) in which the identity of the amount of stock bequeathed, with the amount owned by the testator, was deemed a sufficient ground for inferring an intention to make the legacy specific, and there is another case, (*Avelyn v. Wood*, 1 Ves. sen. 424,) in which the mere circumstance of the testators possessing more of a certain species of annuity than he bequeathed, was deemed sufficient to justify the inference of an intention to bequeath so much of the identical stock then possessed. But these cases seem to stand alone, and are not sustained by the current of English and American decisions. The fact that the testator has at the making of his will of that which is given in quantity equal to or greater than the bequest, is ground of an argument, and combined with other circumstances, may lead to the conclusion, that a specific legacy was intended, but under the authorities, and the established inclination of the courts to regard legacies as general rather than specific, it can not of itself change the class of legacies from general to specific.

2. The second inquiry is whether the extrinsic circumstances, which it is permissible to consider, and the context show the intention to make the legacy specific. Here, it

must be observed, that it is neither averred nor proved, that the testator had, at the date of the will, Confederate States bonds sufficient to satisfy the various legacies to be paid in them. The bill alleges, that the testator had a large amount of such bonds, but we can not intend in favor of the pleader that the amount described by the indefinite word "large" exceeded the amount of such legacies.

The chancellor, (whose opinion deserves to be complimented for the clear conception evinced of the points of the case,) thought the intention that the legacies of Confederate States bonds should be paid out of particular bonds of that description possessed by the testator, was shown by the 23d item of the will. That item, after appointing the executors and exempting them from giving bond, proceeds as follows: "They, [the executors,] are only required to have this will probated, and to pay off all my just debts, and to *divide* the land, negroes, notes, &c., to be *given off*, in the order herein named." "&c.," it is contended, brings within the scope of the clause all the bequests of the will, and that the clause should be read as requiring of the executors *only to divide* the assets, and that the import of "*divide*" is such as to indicate the intention that the legacies were to be paid in specie out of the money and property possessed by the testator. This position can not be sound, for there is an express provision for the sale of cotton, and the appropriation of ten thousand dollars of the proceeds of such sale to the erection of monuments to the memory of Gen. Jackson and Col. Cobb, and Col. Bartow, and for the appropriation of the remainder of such proceeds, together with the residuum of the estate, to raise monuments to the memory of certain officers and soldiers. It, therefore, cannot be that the duty of the executors in the payment of legacies is restricted to the division of property and money in specie. There is at least one interpretation of this clause which would be more satisfactory than that which attributes to the testator a design to make all the legacies specific. That interpretation is, that "divide" was an expression adopted with a degree of inaccuracy not unusual in wills to designate the duty of ap-

propriating the assets of the estate to the accomplishment of the testator's purposes as declared in the will in reference to the several beneficiaries. This interpretation is strengthened by the next clause of the same sentence, in which it is directed, that two of the executors should go to Arkansas, where a large portion of the estate was situated, and there not merely pay debts and divide property, but do all things " necessary to be done in order to carry out the provisions of " the will. If the legacy of twenty thousand dollars in Confederate States bonds is construed in reference to the other provisions, two arguments are deduced strongly opposed to the conclusion that the testator intended to make it specific. First, there are several legacies where the words necessary to make them specific, seem to have been inserted *ex industria*, thus indicating that the distinction was understood and observed. Secondly, legacies of railroad bonds are given to the amount of forty thousand dollars, while only thirty-four thousand dollars were found after the testator's death. It is not asserted in any way, that the testator had more of such bonds at the date of his will than were found after his death. It may be assumed, therefore, that the testator bequeathed six thousand dollars more of railroad bonds than he possessed. Yet, in language not distinguishable in legal effect, from that used in the class of legacies we are considering, he bequeathes five thousand dollars in railroad bonds to Samuel Spence, and the same amount to Elliott H. Muse and Eliza F. Gilmer. These legacies can not possibly be considered specific. They are general by the terms employed to give them, and no intention that their payment should be restricted to railroad bonds held by the testator can be inferred, because the testator did not have the amount of bonds. We must give to the legacies in Confederate State bonds the same construction which we give to the legacies in railroad bonds couched in identical words. It would be an inconsistency, obvious and glaring, to interpret the same language differently in reference to the different classes of bonds. And as we must hold the legacies payable in railroad bonds above specified general, so we must hold the legacies of Confederate States bonds of the class under present examin-

ation. We must understand the testator to have used the same language in the same sense in different parts of his will. The class of legacies which we are examining are in our opinion general and not specific, and we do not think our conclusion would be different, if it had been shown that the testator possessed the amount of Confederate States bonds requisite to satisfy all the legacies of that class.

Having ascertained that the legacy is general, by which there is given to Thomas L. Gilmer, "twenty thousand dollars in Confederate States bonds," (which we take as an example of the others of the same class,) it is now to be resolved what are the duties of the executors in reference to the payment of that legacy. Confederate States bonds of some considerable value in 1863, when the will was made, are now worthless. To save the interest of the legatee from utter destruction by the annihilation of the value of those securities, the argument is made, that the testator intended at all events that twenty thousand dollars should be paid, that the mode of payment was a secondary consideration, and that the prescribed securities having become worthless, payment must be made in current money. This argument does not stand the test of examination. The legacy is general, not specific, as we have seen. It is also general, not demonstrative. A legacy is demonstrative when it is general in its nature, but a particular fund or source is pointed out for its payment, and such legacy failed by reason of the failure of the fund pointed out for payment.—*Myer v. Myer, supra,* 1 Roper on Leg. 198, 200 2 Redfield on Wills, 462. Here the legacy is general without any superadded demonstration of the fund out of which it was to be paid. It is a legacy of twenty thousand dollars *in* Confederate States bonds, not out of, or to be paid from, my Confederate States bonds. It designates the article in which payment is to be made, not the source or fund from which the means of payment are to be derived. It relates to the instrument of payment, not to the means or source of its obtainment. In the case of *Pierpont v. Edwards,* 25 N. Y. Rep. (11 Smith) 128, the legacy was of so many dollars to be paid "out of the income" of the testator's estate. The court found in the phraseology em-

Gilmer's Legatees v. Gilmer's Executors.

ployed and in the extrinsic circumstances, evidence of a separate and independent intention that the money should be paid, and that the direction of payment "out of the income" was simply by way of demonstration of the source whence the means of payment might be obtained. Hence, the legacy was held to be demonstrative, and unaffected by abatement of the income. So also in the other three cases cited by the counsel for the appellants, (*Saville v. Blacket,* 1 P. Williams, 777, and *Dickin v. Edwards,* 30 English Ch. 273 ; *Mann v. Copland,* 2. Mad. 223,) the legacies were demonstrative. They were general legacies with a *demonstration* of the fund from which they should be paid.— 1 Roper on Legacies, 198. *Smith v. Lampton,* 8 Dana, 69, sets forth very pointedly the class of demonstrative legacies. The bequest in that case, were of so many dollars in bank notes of a certain bank " out of the monies of that description now on hand." The legacy was held to be demonstrative, that is, general, with a demonstration of the fund out of which it was to be paid. The point is thus decided by the court. " Nothing appearing to the contrary, a bequest of a certain sum of money ' out of' or ' to be paid out of' a designated fund or note or bond, or a bequest of stock ' out of' a greater amount of like stock has been generally considered a demonstrative legacy, pledging a particular fund as a collateral security, and being as to that security merely directory, but not depending for its validity or value on the sufficiency or existence of the fund thus specially dedicated for its security."

We encounter the question whether the legacy of twenty thousand dollars in Confederate States bonds is to be satisfied by the payment of such bonds to the value of twenty thousand dollars, or to the amount of twenty thousand dollars, according to the sums called for upon their face. If we should adopt the rule which prevails in this State in reference to contracts, we should probably decide that the latter is the measure of payment.— *Williams v. Sims,* 22 Ala. 512 ; *Carlisle v. Davis,* 7 A. R. 42. But that question has not been argued and we do not decide it. Under either construction the legacy fails. If the legacy gives bonds to the amount of twenty thousand dollars, counted from

the face of them, the legacy is worthless and fails. If it gives such bonds to the value of twenty thousand dollars, it is impossible of performance, and therefore fails.—1 Jar. on Wills, 681, 682. It is said that the legatee here, is the brother and one of the heirs of the testator; that it was natural for the testator to provide for him out of his abundant estate; that he showed his intention to do so, by giving a legacy in a certain class of bonds when they were of value, and that the intention of the testator will be defeated under our decision. It must be granted that the intention to provide for the legatee is defeated by the annihilation of the value of the bonds, but it is not for a court employed in the construction of a will to make one conformable to some vague conjecture of what the testator would have done, had he survived the annihilation of the value of the bonds. It is only our province to construe or declare what wills mean. We conclude this branch of the case, by announcing the decision that the legacies in Confederate bonds herein before mentioned fail, and that the legatees take nothing on account thereof.

2. The second class of legacies to be construed are those in railroad bonds. The legacy in favor of Elizabeth Gilmer, in the second item, of twenty-five thousand dollars of certain bonds which the testator held, is specific, and should be paid out of bonds of the estate of the specified character without abatement. The several legacies to Eliza F. Gilmer, Samuel Spence, and Elliot H. Muse, mentioned in the 8th, 19th and 20th items, "of five thousand dollars in railroad bonds," are general legacies, and are to be paid in full, and any deficiency for that purpose in the quantity of such bonds belonging to the estate, must be supplied by the executors out of the general assets of the estate. This decision is supported by the arguments already produced in reference to the legacies in Confederate bonds.

3. A third question applicable to a single legacy arises under the 12th item of the will. By that item there is bequeathed to William J. Adams, twelve thousand dollars in notes, in which his own is to be included. At the time of making the will, the testator held a note on the legatee, and afterwards and before his death gave it to him. The

transfer of the note would have adeemed the legacy to that extent; *a fortiori* will it be thus far adeemed by a transfer by gift to the legatee ?—2 Redfield on Wills, 528.   This legacy must be abated by the amount of the note given by the testator to the legatee.

4. The bequests in the 13th, 14th, 15th, and 22d items of the will give legacies in notes or Confederate States bonds, at the option of the executors.   Confederate States bonds being worthless, these legacies must fail at the option of the executors.   The courts will not interfere with the exercise of a discretion.—2 Sugden on Powers, 161.   The legatees are not entitled to payment in notes unless by the choice of the executors.   The legacy to John W. Akers in 16th is to be paid in notes to such extent as the executors may determine.

5. The bequest for the erection of monuments to the memory " of Gen. Stonewall Jackson, of Virginia, and Col's. Thomas Cobb and Bartow, of Georgia," are valid.   The bequest " for assisting to raise *monuments* to the memory of *all* other officers and soldiers from the State of Alabama who distinguished themselves, or those who have died from wounds or were killed in defense of their country, in the present war between the United States and the Confederate States," is void on account of the impossibility of its performance.   The bequest contemplates the erection not of a single *monument,* but of monuments to the memory of the persons described taken singly.—2 Roper on Legacies, 1238, 1244 ; 2 Redfield on Wills, 769, 832 ; *Potter v. Chapin,* 6 Paige, 639.

BYRD, J., concurs in the conclusion attained by the court, but as to some of the questions, does not concur in the reasoning by which the court sustains its decision.

Reversed and remanded.