ELLA M. AITCHISON *vs.* FREDERICK H. CHAMBERLAIN, trustee, & another, executor.

Worcester.    September 27, 1922. — October 17, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Trust,* Postnuptial, Validity. *Husband and Wife. Equity Jurisdiction,* Laches, To set aside postnuptial agreement.

From findings by a master to whom was referred a suit in equity by a widow to set aside a postnuptial agreement, made by her and her husband with a trustee, and a deed executed by the husband in accordance therewith, the following facts appeared: The parties were married in November, 1907, the plaintiff then being forty-eight and her husband eighty years of age. Less than five months after

the marriage, she left him and thereafter they did not live together. For three years thereafter there were negotiations and conferences between the parties and able counsel, representing them, respectively, during which the plaintiff, an intelligent woman, was fully informed as to the value of her husband's estate, nothing was concealed from her and she was in no way misled. The postnuptial agreement was signed in May, 1911, after she had been fully advised by her counsel as to its legal and practical aspects. The agreement recited that the plaintiff and her husband were living apart from each other; that it was desired to effect a settlement "of all financial and property matters . . . so as to include all present or future rights, which either now has for any property and estate of the other, and in their respective estates in case of the decease of either." It included a covenant by the husband to pay the trustee $7,000 to be paid to the wife in full settlement of all claims against her husband or his estate; covenants by the trustee in behalf of the wife, and by the wife with the trustee, that she would make no claim for separate support during the life of her husband, and no claim for dower, homestead, or as statutory heir at law, upon his estate after his death; a covenant by the wife to execute such deeds as might be necessary to release her interest in her husband's real estate, and one by the husband with the trustee that he would make no claim on his wife's estate and would execute such deeds as might be necessary to release his interests in his wife's real estate. The trustee executed a declaration that he held the husband's property as a discretionary trustee during the husband's life, distribution to be made after his death according to a memorandum which the husband might change from time to time. The plaintiff was not mentioned in the memorandum. The disposition directed by the memorandum was the only thing of which the plaintiff was in ignorance when the agreement was executed by her. The husband's property at the time the deed was made was worth $58,550, and the net proceeds, after sales by the trustee covering a number of years, were $79,938. The husband died in April, 1920. This suit was brought in January, 1921. The master found that the plaintiff was guilty of laches. *Held,* that

(1) The finding of laches on the plaintiff's part was warranted and barred relief;

(2) Ignorance on the plaintiff's part of the beneficiaries named in the memorandum given to the trustee was immaterial;

(3) Ignorance on the part of the plaintiff of relations between her husband and a nurse who lived with him from 1910 to 1920 in the circumstances did not relieve the plaintiff of the consequences of her delay and silence during her husband's life;

(4) A finding by the master that the agreement and settlement were fair, just and reasonable was warranted;

(5) The agreement was valid;

(6) The bill must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 28, 1921, and afterwards amended, against Frederick H. Chamberlain, named as trustee in a postnuptial agreement between the plaintiff and her husband George T. Aitchison, and Irving F. Morey, the executor of the will of George T. Aitchison, to set aside that agreement and the deed accompanying it.

The suit was referred to a master. Material findings of fact by the master are described in the opinion. The plaintiff filed objections and exceptions to the report. The suit came on to be heard before *Braley,* J., and by him was reserved for determination by the full court "on the pleadings, the master's report and the exceptions thereto."

*E. A. Ryan,* for the plaintiff.

*G. S. Taft,* for the defendant.

CARROLL, J. This is a bill in equity to set aside a postnuptial agreement and a deed by which the plaintiff's husband conveyed his property, in trust, to the defendant Chamberlain as trustee. The defendant Morey is the executor of the husband's will. The case is before us on the plaintiff's exceptions to the master's report.

The plaintiff married George T. Aitchison November 25, 1907. She was at that time a widow, forty eight years old, and Aitchison was a widower eighty years of age. They lived together at his home in Worcester until April 4, 1908, when she left him, and thereafter they did not live together. On May 11, 1911, the postnuptial agreement was entered into. It recites that the plaintiff and her husband are living apart from each other; that it is desired to effect a settlement "of all financial and property matters . . . so as to include all present or future rights, which either now has for any property and estate of the other, and in their respective estates in case of the decease of either." It includes a covenant by the husband to pay the trustee $7,000 to be paid by him to the wife in full settlement of all claims against her husband or his estate; covenants by the trustee in behalf of the wife, and by the wife with the trustee, that she will make no claim for separate support during the life of her husband, and no claim for dower, homestead, or statutory heir at law, upon his estate after his death; a covenant by the wife to execute such deeds as may be necessary to release her interest in her husband's real estate; and one by the husband with the trustee that he will make no claim on his wife's estate and will execute such deeds as may be necessary to release his interest in his wife's real estate.

The trustee by a written declaration declares that he holds the property in question to stand seised of the same during the lifetime of Aitchison, and to permit him to occupy and rent the

property and to use the proceeds until such time as the trustee may see fit to take over to himself its control; the trustee to have full power to sell or mortgage, and to apply the whole or any part of the income or principal to the support of Aitchison, and upon his death, to pay Aitchison's debts and distribute the remainder of the trust estate to the distributees mentioned in a memorandum signed by Aitchison and the trustee, or mentioned in any new memorandum so signed by them; and any balance remaining after paying the distributees in full, to go to those who would be entitled to Aitchison's personal estate if he died intestate, except that his wife "is to have no part in the residue."

When these papers were executed Aitchison's property consisted of seven parcels of land of the assessed value of $58,550, all of which was included in the deed to the trustee, and personal property consisting of household furniture and carriages of no "substantial value in comparison with his real estate holdings." The property held by the trustee was sold in the years 1912 to 1917, inclusive, for $89,800, the net proceeds, after deducting the mortgage indebtedness, being $79,938.48.

The master found that the trustee administered the trust in accordance with its provisions; that the plaintiff offered to return the $7,000 paid her.

He also found that the plaintiff was guilty of laches. She ceased to live with her husband in April, 1908, about four months after their marriage. In May, 1911, the postnuptial and trust agreements were executed. In April, 1920, Aitchison died, and this bill in equity was not filed until January 28, 1921. For nearly ten years the plaintiff was quiescent and made no attempt to set aside the agreement. No reason for this delay is alleged in the plaintiff's bill. No material facts unknown to the plaintiff when the agreement was made and which she could not have ascertained before the husband's death, were disclosed by the evidence, and the master found that the only facts of which she was ignorant until that time, were those concerning the list of beneficiaries under the trust agreement, and states that these were not pertinent to the issue raised by the bill. The laches of the plaintiff was found as a fact. No evidence is reported and this finding must stand unless it is shown by the report that the master was clearly wrong.

When the separation agreement was signed Mrs. Aitchison had the assistance of counsel. She considered with him the amount of Aitchison's estate and, in particular, the value of his real estate holdings, was a matter of discussion between herself and her counsel for at least three years before the papers were executed. They both knew the approximate value of her husband's real estate. The plaintiff was an intelligent woman, and according to the master's finding, was familiar with the different properties and had some knowledge of their general values. No information respecting the real estate was withheld from her, and no false or fraudulent representations concerning either its value or amount were made to her. In the light of all the facts found by the master, we cannot disturb the finding that she was guilty of laches.

Her ignorance of the beneficiaries of her husband's bounty did not justify her delay. By the trust agreement she had surrendered all her rights to share in his estate; and the expectation which she now claims, that her husband would make her one of his beneficiaries, either under the trust instrument or his will, affords no excuse for waiting until his death before attempting to question the validity of the settlement. In the meantime the trustee had been carrying out the trust. All the property has been sold as provided in the deed. It is claimed by the plaintiff that she did not know what the property sold for until after her husband's death. Even though this contention were true, she and her counsel were acquainted with the value of the real estate "to practically the same extent" as Aitchison and his attorney, and the fact that it was sold for a sum greater than what she or her attorney considered it worth, does not indicate that the finding of laches was wrong.

It is also claimed that she was ignorant of the relations between her husband and the nurse who lived with him from 1910 to 1920, until after his death. The master found that the plaintiff knew that the nurse was living in her husband's household and had cause to suspect under what conditions they were living. If the agreement was voidable, as the plaintiff now claims, she should not have rested on her rights for nearly ten years, until her husband's lips were sealed, before seeking to impeach it. Her delay was unreasonable, and it would be contrary to equity to allow her, after this long neglect, to set the agreement aside. "Diligence

is an essential prerequisite to equitable relief of this nature. Quiescence will be a bar when good faith requires vigilance." *Stewart* v. *Finkelstone,* 206 Mass. 28, 36.

Even if the plaintiff were not barred by laches, no false or fraudulent representation as to the amount or value of Aitchison's property was made to her by her husband. A postnuptial agreement when the husband and wife are separated, when made through a trustee, is valid; *Terkelsen* v. *Peterson,* 216 Mass. 531; and will be enforced if free from fraud, and fair and reasonable under all the circumstances of the case. *Terkelsen* v. *Peterson, supra. Bailey* v. *Dillon,* 186 Mass. 244.

The master has found that the postnuptial settlement was fair, just and reasonable. Without reciting all the facts found by him, the report shows that the plaintiff herself suggested the compromise; that she was fully advised by her counsel who emphasized to her the main features of the agreement and told her that if she survived her husband the contract was not an advantageous one; and, on the contrary, if he survived her it was an advantageous one. She took the contract to her home to reflect upon the advisability of entering into it, and after considering it and taking into account her husband's health and her own circumstances, she decided that $7,000 at that time "would do her more good than to wait until Mr. Aitchison died."

The contract was free from fraud or coercion and the plaintiff entered into it intelligently. She knew what her rights were and she had the assistance of learned counsel. In view of all the circumstances it cannot be said that the agreement was unreasonable or unfair.

A decree is to be entered dismissing the bill, and it is

*So ordered.*