146 So. 814

**RASH v. BOGART et al.**

8 Div. 466.

Supreme Court of Alabama.
March 9, 1933.

Ernest Parks, of Scottsboro, for appellant.

Proctor & Snodgrass, of Scottsboro, for appellees.

BOULDIN, Justice.

The vital inquiry in this cause is whether a postnuptial and postseparation agreement

between husband and wife shall be given effect in equity, in bar of the right of the widow, after the husband's death, to dissent from his will, and take dower, homestead, and exemptions of personalty, or otherwise share in his estate.

This agreement reads:

"State of Alabama, Jackson County.

"Know all men by these presents,

"That for and in consideration of the sum of One Thousand ($1000.00) Dollars to me in hand paid, receipt whereof is hereby acknowledged, I, Sarah Jane (Gentry) Rash, do hereby release all claims to homestead exemptions, dower interests and all exemptions of any kind which may accrue to me at the death of my husband, L. R. Rash.

"It is the purpose of this instrument to release the estate of L. R. Rash from all claims that may accrue to me at his death as his widow and that said L. R. Rash may deed, or will, his land to his children.

"It is also agreed that the said L. R. Rash hereby releases all claims that he may have against my estate in the event he survives me.

"L. R. Rash

"Witness:
  Avery Steele

"Sarah Jane Rash.

"Witness
  J. B. Winn"

The pertinent facts, some undisputed, and some supported by the weight of the evidence as we find them on a careful study of the record, are substantially as follows:

Leroy Rash and Sarah Jane Gentry were lawfully married in March 1920. He was then 73 years old and had four children of a former marriage. She was 65 years old, and had no children. After living together some 10 years, they separated. About a month after separation, date not given, the parties met in the First National Bank of Stevenson, several miles from their homes, where Mr. Rash did his banking business, and, after a conference, Judge W. R. Bogart, an officer of the bank and former judge of probate, was requested to and did 'draw the agreement, which, after being read to the parties, was executed, and Mr. Rash paid the $1,000 therein agreed.

Mr. Rash died July 8, 1931, something less than a year after this transaction. His real estate at the time of the agreement consisted of a farm of 150 acres and cut-over mountain timbered lands of probably 450 acres. By the weight of evidence the value of the whole was $5,000. He had $2,500 cash in the bank, and farm animals, etc., probably worth $500, a total estate of approximately $8,000 in value.

The record is entirely silent as to who promoted the conference at Stevenson, or who suggested the terms of agreement.

Prior to this marriage Mrs. Rash had resided with Mr. and Mrs. J. B. Winn. It appears Mrs. Winn was her sister. After the separation, she returned to the same home or that of Mr. and Mrs. Avery Steele. Mrs. Steele was her niece, and a daughter of Mr. and Mrs. Winn.

Messrs. Winn and Steele were present at the conference in Stevenson and signed as witnesses to the agreement. It appears the same relations existed between them and Mrs. Rash to the time of taking testimony. Neither of them was examined as witnesses.

Mrs. Rash's neighbors testify to her subsequent declarations indicating she knew clearly the purport of the agreement, and her purpose to abide by it. She did not testify.

In 1923 Mr. Rash executed his will, dividing and devising his lands to his four children, making a bequest of $1,000 to his wife, and residue of personalty to the children.

Appellees argue that there was a parol antenuptial agreement that the wife should have $1,500 in full of her interest in the estate; that $500 was paid her at or about the time of marriage; that the will was intended to give her the residue at decedent's death; and that this agreement, giving her the money at the time, was in consummation of such antenuptial agreement. It is admitted that the husband did give his wife the $500; but evidence of such antenuptial agreement is wanting, unless by remote inference. We need not decide whether such evidence would be admissible in view of the statute of frauds.

■■ While there is some evidence that these old people came to a separation because of a difference touching the execution of deeds to the several children for the lands allotted to them, we think a right decision in the case cannot be reached by trying to place the blame for their separation. "A contract by the widow to release dower and distributive share, made before or during coverture, will be enforced in equity," but "we think the rule requires that the consideration be adequate, and the entire transaction fair, just, and equitable from the wife's view, or that it was freely and voluntarily entered into with competent independent advice and full knowledge of her interest in the estate and its approximate value, and that the husband or his representatives have the burden in that respect." Merchants' Nat. Bank of Mobile v. Hubbard, 222 Ala. 518, 523, 524, 133 So. 723, 727, 74 A. L. R. 646.

This rule, well supported by authority, was quite apt and adequate in dealing with the case then in hand, where it was sought to raise an estoppel against the widow making a dissent from the will of her husband because of words of approval while yet living with him, together with words and acts after his death said to be inconsistent with a purpose to dissent.

■ The exacting burden thus cast upon the husband, or those standing in his right, has its basis in the nature of such transactions, and particularly the intimate confidential relations between husband and wife; the husband, unless otherwise shown, being treated as the dominant party.

Our statute now gives express power to the wife to make contracts with her husband, but still subject to rules of law touching contracts between persons standing in confidential relations. Code, § 8272. This includes the power to convey her lands to the husband. Osborne v. Cooper, 113 Ala. 405, 21 So. 320, 59 Am. St. Rep. 117.

■ These rules recognize the equally obvious fact that, when confidential relations are severed under conditions disclosing that the dominating influence presumed to have existed theretofore has been removed, and the party is thereafter acting at arm's length, or on the advice of friends and kindred desiring to conserve his or her interest, the presumption of undue influence is overcome.

In the case before us there had already been a severance of the family relation, a separation evidently intended by the wife as final, an estrangement in fact, a return to her own people whose interest was her interest, and evidently giving sanction to the settlement which was made.

■ The relation of husband and wife is per se a confidential relation. This means such relation in fact, the family relation in connection with the legal bonds that make them husband and wife. The legal obligations of maintenance and support, as well as the rights of dower, homestead, etc., furnish the subject-matter for agreements of this sort, but the legal bonds alone cannot prevent the severance of those actual relations by which one person obtains and holds a dominating influence over the other in the adjustment of the property rights which have grown out of the legal relation.

■ After separation, equity does not look with disfavor on a friendly adjustment of property rights out of court. This involves the care and maintenance of the wife while they both shall live, and in the same connection, if desired, a division of property, an allowance to the wife in lieu of all property rights growing out of the marital relation. Such a contract, supported by a valuable consideration, is sustained in equity as other contracts, subject to annulment or cancellation for fraud, concealment, or other inequity. Bulke v. Bulke, 173 Ala. 138, 55 So. 490; Sullivan v. Sullivan, 215 Ala. 627, 630, 111 So. 911; Merchants' Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335; Colbert v. Rings, 231 Ill. 404, 83 N. E. 274; Aitchison v. Chamberlain, 243 Mass. 16, 136 N. E. 818; Greenleaf v. Blakeman, 40 App. Div. 371, 58 N. Y. S. 76 (affirmed Greenleaf

v. Schley, 166 N. Y. 627, 60 N. E. 1111); Bradley v. Burgess, 109 Kan. 347, 198 P. 967; Keller v. Keller, 121 Kan. 520, 247 P. 433, 49 A. L. R. 113, and extended note page 116 et seq.; 19 C. J. pp. 250, 251, § 584.

Such settlements are often found in connection with divorce proceedings. Where divorce follows, necessarily dower, homestead, personalty exemptions, distributive share in the husband's estate are all cut off by the severance of the marriage bonds. Any modification thereafter rests upon the power of the equity court to modify its decree touching alimony and allowances.

■ But such adjustments of property rights do not depend upon divorce proceedings. Neither party may have a lawful ground of divorce.

Such agreement, if connected with collusive divorce, would be against public policy. So, when these old people, one 75 years of age, the other 83, at the time of separation, undertook to make a complete settlement of all property rights growing out of their marital relations without litigation and without a record of divorce left behind them, there is no sound reason in law or morals why it should not be sustained, unless infected with some infirmity which justifies its cancellation in equity.

The Massachusetts case of Aitchison v. Chamberlain, supra, was strikingly analogous. There was in that case a greater disparity of age, the wife being 48 and the husband 80 at the time of marriage, and, it seems, because of common-law disabilities of coverture, a trustee was brought in to hold the property for the wife. The settlement was upheld as reasonably fair and equitable under all the circumstances, and effective against all claims for dower, homestead, or distributive share in the husband's estate.

■ Manifestly, as mentioned by the Massachusetts court, in passing upon the fairness of the settlement made, the conditions at the time are to be considered, not present conditions arising from after events beyond the control of either.

■ Some of the conditions present when the agreement now before us was made were these: The legal obligation of the husband toward the wife was maintenance while they both lived. This might end any day; must, in the natural course of events, end soon. In such event, if the widow survived, itself a contingency, her homestead and dower rights would attach. This does not mean, as seems to be claimed, that she was entitled, as of right, to take a homestead of $2,000 in value for life, and a distinct parcel equal to one-third the lands in value, as dower. Quarantine and dower rights at common law, and by statute include the residence last occupied by the deceased; and aim, if prac-

tical, to preserve to her the family home. The homestead is a distinct constitutional and statutory estate, but, like dower, covers the last residence of deceased, and in this is a kindred estate.

In small estates it may be much more valuable than the dower. In allotting each, the rights of children as well as widow are to be considered; and in many cases they may properly be laid off one upon the other, securing to the widow the benefit of the larger estate in value. Boyte v. Perkins, 211 Ala. 130, 99 So. 652; Little v. Ennis, 207 Ala. 111, 92 So. 167; Gilmer's Legatees v. Gilmer's Ex'rs, 42 Ala. 9.

As to the $2,500 in the bank and other personalty then on hand, the wife had no legal claim. If, as now insisted, the husband desired to make provision for his children, it was his lawful right, but for this agreement, to make a division of same among them. So the claim now asserted in the cross-bill, that the widow is entitled to hold the $1,000 paid her, claim another $1,000 of the remaining money as an exemption of personal property, and take the valuable lands for life by way of dower and homestead, is to give her the fruits of her contract and the advantage of the status in which the husband left his estate in reliance upon an agreement she seeks to avoid after his death. Such contention is untenable.

In considering the obligations which each should properly recognize when framing this agreement, the $500 already advanced was one.

In the contract it was stipulated that, if the husband survived, he should not share in the wife's estate. This, to say the least, was a surrender of his contingent one-half interest in this $1,000, or so much of it as remained; or, if invested in lands, by the wife, the use of the entire lands for the remainder of his life. Code, § 7376.

The agreement is clear, concise, and unambiguous; that the wife knew its meaning and effect we have no question; that she knew the estate owned by the husband is not denied. Nothing indicates she was of less intelligence or strength of character than her husband. We are convinced that after full reflection, with the advice of intelligent friends, and without fraud or undue influence on the part of the husband, Mrs. Rash entered into this agreement in good faith. In view of the circumstances and contingency then present, we see no good ground to hold it so inequitable as to justify a court of equity in annulling the arrangement these old people made of their affairs.

The trial court so held, but further decreed that the widow is still entitled to homestead, and ordered same set apart to her. In this there was error. The agreement clearly covered the homestead. She had the same power to contract with reference to such prospective right as widow which she had as to dower and other contingent property interests. In other words, a separation agreement under the conditions disclosed may cover all contingent, inchoate, and prospective property rights of the wife in the husband's estate.

That there may be an end of the litigation, we further hold that the agreement, under the facts disclosed, was intended to have effect according to its terms, and that the $1,000 paid pursuant thereto was intended to be and was in satisfaction or ademption of the legacy of $1,000 named in the will theretofore executed by the husband. 40 Cyc. 1914 et seq.

The decree of the court below will be reversed, and one here rendered in accordance with the foregoing opinion.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.