160 So. 530

### COLLIER v. TATUM et al.

7 Div. 289.

Supreme Court of Alabama.
March 28, 1935.

Culli & Culli, of Gadsden, for appellant.

W. T. Murphree, of Gadsden, for appellees.

BROWN, Justice.

The bill in this case was filed by the executor and legatees claiming under the last will and testament of B. T. Collier, deceased, against Collier's widow, Callie Butler Collier, to enforce an alleged postnuptial settlement, praying that the widow be estopped from dissenting from the will and claiming her distributive share in Collier's estate.

The will was executed by the testator after the alleged settlement, and disposes of an estate of the value of upward of $7,000, consisting of personalty, to the brother and nieces and nephews of the testator, less the sum of $5 devised to the widow, reciting as a reason for the last-mentioned devise the alleged postnuptial settlement. The will was duly probated in the probate court of Etowah county, and the administration of the estate is still pending in that court.

The alleged postnuptial settlement designates Collier as "party of the first part" and the wife as "party of the second part," and, so far as is material here, is as follows:

"1. That the party of the second part, for and in consideration of the delivery to her by the party of the first part the following described articles, towit:—One Postal Savings Certificate of Deposit in the sum of $500.00, Serial No. 103596, issued November 24, 1931, account No. 598; One Postal Savings Certificate of Deposit in the sum of $500.00, Serial No. 103597, issued November 24, 1931, account No. 598; One Postal Savings Certificate of Deposit in the sum of $500.00, Serial No. 103579, issued July 3, 1931, account No. 598; all of said certificates are Alabama series of 1917. Shareholders Certificate, the Alabama Home Building and Loan Association, Birmingham, Alabama, in the amount of $4,000.00 consisting of 80 shares, Number A 7109 of date July 1, 1929; together with household goods and effects, the receipt whereof is hereby acknowledged by the party of the second part, does release, remise and quitclaim to the party of the first part and unto his heirs and assigns, all and every right, interest and claim to which she might be entitled by reason of her marriage to the party of the first part, in and to all the property of the party of the first part which is now owned by him, or to which he may become entitled at any time, including her distributive share in his estate, her right of dower and her homestead right, in the event she shall survive the party of the first (part), as well as all claim to alimony.

"The party of the second part enters into this contract voluntarily and with full knowledge of the financial condition, nature, character and value of the estate of the party of the first part."

The defendant, appellant here, in her answer to the bill alleges that the property described in the said agreement as the consideration for its execution was wrongfully withheld from her by her husband to coerce her into signing said agreement, and in law said agreement is nudum pactum.

The jurisdiction of courts of equity to uphold and enforce such agreements, though void under the common law because the husband and wife were regarded as one

person and incapable of making such a contract, is well established, and the statutes enabling the husband and wife to contract with each other in no way affected the jurisdiction of such courts, although it may be conceded that courts of law may now determine the validity of such contracts. Rash v. Bogart, et al., 226 Ala. 284, 146 So. 814; Merchants' Nat. Bank of Mobile v. Hubbard et al., 222 Ala. 518, 133 So. 723, 74 A. L. R. 646; 13 R. C. L. 1360, § 404; Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am. St. Rep. 46; Anonymous, 34 Ala. 430; Gould, Ex'r, etc., v. Womack and Wife, 2 Ala. 83.

Where the court's jurisdiction is invoked to enforce such agreement, the burden is on the complainant to show that the entire transaction was fair, just, and equitable, that the agreement was freely and voluntarily entered into, and is supported by fair and valuable consideration, and in determining what is a fair and valuable consideration the court will take into consideration the value of the wife's interest in the estate, and whether or not she had competent, independent advice as to such interest. Barker et al. v. Barker, 126 Ala. 503, 28 So. 587; Merchants' Nat. Bank of Mobile v. Hubbard et al., supra; Rash v. Bogart et al., supra; 19 C. J. § 155.

And, where, as here, the administration of the estate is not removed to the court of equity, but remains in the probate court, the extent to which the court will decree is to declare the contract valid and set up an estoppel against the party releasing the interest, or declare it inequitable and unjust and refuse relief to the complainant. Gould, Ex'r, etc., v. Womack and Wife, supra.

After careful consideration of the legal and competent evidence, we are forced to the conclusion that the complainants have failed to meet the burden of proof resting upon them, and are not entitled to the relief which they seek. The evidence is without dispute that at the time of the marriage, the wife had an estate of her own, consisting of both real and personal property; that the husband was then operating a boarding house and had a position as rental agent and police officer for the Gulf States Steel Company; that the wife entered into the work of maintaining the boarding house with her husband and so continued up until her illness in 1932; that they each had a deposit account in the banks at Gadsden and also maintained a joint savings account; that they each invested money in building and loan stock and Postal Savings certificates, and said stock and certificates procured by the wife were issued to her in her own name and were her property; that the husband obtained the possession of the stock and certificates of the wife for safekeeping and wrongfully refused to deliver them to her, as a means of procuring her signature to the alleged settlement agreement, and the only consideration for her signature to the alleged agreement was the delivery to her of her own property. In these circumstances they were not dealing at arm's length, but the wife, by the wrong of the husband, was in a disadvantageous position.

It further appears that at the time of the execution of the alleged agreement all treaties between the parties looking to a reconciliation between them had not been abandoned, and failure of such treaties resulted from the unreasonable demands of the husband that the wife "give up her brothers * * * and live for him alone." The evidence shows that shortly before his death he contemplated a birthday dinner at which he intended to have the wife as his guest.

Moreover, the husband did not release his interest in the wife's estate, and the evidence goes to show that discord between Collier and his wife was engendered by the fear that the kin of the wife would eventually obtain possession of her property and place it beyond his reach, and his unsympathetic treatment of the wife during her serious illness.

The agreement, therefore, must be declared nudum pactum and unenforceable at law or in equity. Crownover et al. v. Crownover, 216 Ala. 286, 113 So. 42; Richardson Bros. & Co. v. Fields, et al., 124 Ala. 535, 26 So. 981.

The decree of the circuit court is therefore reversed, and a decree will be entered here denying the complainants relief and dismissing the bill.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.