RUTH CULL SMITH ET AL., APPELLANTS, V. LYDIA M. JOHNSON ET AL., APPELLEES: CARROLL O. STAUFFER, EXECUTOR, APPELLANT.

14 N. W. 2d 424

FILED MAY 19, 1944. No. 31649.

*Carroll O. Stauffer* and *John A. McKenzie*, for appellants.

*John L. Barber*, Jr., and *Chatt & Ellenberger, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL and WENKE, JJ., and POLK and NUSS, District Judges.

POLK, District Judge.

This is an action in partition involving 160 acres of land in Burt county, Nebraska. It was instituted by the devisees under the will of Emma B. Samson against Lydia M. Johnson, devisee under the will of Oscar Samson, and others. From a decree denying partition an appeal is prosecuted to this court.

The record shows that Oscar Samson and Emma B. Cull were married on October 5, 1911, and at this time he was 62 years of age and she was 44 years of age. He was the father of five children by two prior marriages and she was the mother of three children by a prior marriage. They lived together from the time of marriage until his death on August 27, 1940. On August 12, 1927, Samson and wife, then of Oakland, Nebraska, executed a postnuptial agreement which provided in substance that Mr. Samson should not have any right or interest in the estate of his wife after her death and that Mrs. Samson upon the payment to her of $32,500 in cash or sound securities by the executor of Mr. Samson's estate and a deed by his other heirs to the family home in Oakland, Nebraska, would release and quitclaim all right, title and interest in his estate. The agreement recited that Mr. Samson had by will bequeathed and devised Mrs. Samson $32,500 and the above property in Oakland, Nebraska, but it was not until August 22, 1927, that the will was executed.

In the will he devised the land which is sought to be partitioned to his daughter, Lydia M. Johnson, and to his wife he devised the home place in Oakland, Nebraska, and bequeathed her $32,500, all household goods and a pleasure automobile. This will was admitted to probate on September 23, 1940. Before her death on August 3, 1941, Mrs. Samson elected to take her distributive share under the statute rather than the provisions made for her under the will.

In the lower court the postnuptial agreement was interposed as a defense against partition, the contention being that the plaintiffs and appellees as devisees of Mrs. Samson

were estopped from claiming any interest in the land by reason of the agreement of their mother in which she released all hereditary interest therein. It was on this theory of defense that the trial court denied partition.

The assignments of error raise several questions among which we find the question as to whether the postnuptial agreement was valid. This question involves the power of a married woman in this state to enter into contracts. It has been before this court many times. The rule seems to be firmly established that the common-law disabilities of a married woman exist in this state except in so far as they have been abrogated or changed by statute. *Fidelity & Deposit Co. v. Lapidus*, 136 Neb. 473, 286 N. W. 386.

Postnuptial contracts were void at the common law. 26 Am. Jur. 914, sec. 318. Has this disability to contract been abrogated by statute in this state? Sections 30-105 and 30-106, Comp. St. 1929, prescribe certain methods whereby the right of inheritance of a husband or wife may be barred in the other's real estate. These methods are (1) by conveyance of husband and wife, (2) by sale under execution or other judicial sale, and (3) by an antenuptial contract. It will be observed that section 30-106 only refers to a contract before marriage and is silent as to a postnuptial contract between husband and wife. This silence we think is significant. Had the legislature desired to change the common-law rule it would have been a simple matter to have included postnuptial contracts. We think the statutory method of barring the right of inheritance is limited to the methods outlined in the foregoing sections of the statute.

Appellees have called attention to the cases of *In re Estate of Lauderback*, 106 Neb. 461, 184 N. W. 128, and *Ladman v. Ladman*, 130 Neb. 913, 267 N. W. 188, as authority for the recognition of postnuptial contracts in this state. The foregoing cases are what are commonly called separation agreement cases. They do not recognize the right of husband and wife to enter into a postnuptial agreement barring their respective rights in the other's real property while the complete marriage relation exists. The rule in

AFFIRMED.

this state is clearly stated in the case of *In re Estate of Lauderback, supra,* to the effect that where the husband and wife find it impossible to dwell together in harmony because of the misconduct of one which would warrant a legal separation, and as a consequence they decide to enter into a contract adjusting all their property rights and each relinquishes any rights in the property of the other, and providing for the immediate separation of the parties, this kind of a contract is valid and enforceable. Separation agreements founded on this broad, equitable doctrine do not contravene public policy.

Appellees also place considerable reliance on the case of *Jorgensen v. Crandell,* 134 Neb. 33, 277 N. W. 785, as authority for the recognition of postnuptial contracts in this state. This case holds that a postnuptial contract made in California, where this kind of contract is recognized as valid, will be enforced in the state of Nebraska and is in complete harmony with the position that postnuptial contracts without separation, made between husband and wife while residents of Nebraska, will not be recognized and are unenforceable.

The trial court erred in holding that the postnuptial contract was valid and binding on Emma B. Samson, her heirs, executors and representatives. The decree of the trial court is reversed and the cause remanded for further proceedings in consonance with this opinion.

REVERSED.

CHAPPELL, J., dissents.