CLIFTON FOCHT, APPELLANT, V. JOHN WAKEFIELD ET AL., APPELLEES.

17 N. W. 2d 627

FILED FEBRUARY 9, 1945. No. 31853.

*Don Postlethwaite* and *Victor Westermark,* for appellant.

*Daniel E. Owens, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

In this action, plaintiff seeks a decree that he is the owner of an undivided one-fourth interest in certain described real estate, and for a partition of the same. The appeal involves the force and effect of a postnuptial property settlement. The trial court decreed that plaintiff was not the owner of any interest in the property and dismissed his petition. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause.

The facts of the case are not in dispute. Plaintiff is the residuary devisee under the will of Alonzo J. Henderson. The defendants, John Wakefield and Annie Thompson, are the children of Mary J. Henderson. The other defendants are the husband of Annie Thompson and the tenants in possession of the real estate, and are not involved in this appeal.

Alonzo J. Henderson and Mary J. Henderson were married June 25, 1936. Mary J. Henderson had been married previously. The defendants here are the children of the former marriage. At the time of the marriage, Mrs. Henderson was, with one exception, the owner of the several parcels of real estate involved in this action. Mr. Henderson contributed nothing to the acquisition of the property. The parties lived together until about July 1, 1937, when they separated. While living apart they, on August 11, 1938, entered into a property settlement agreement, and concurrently therewith gave each other quitclaim deeds to the property which each held in fee. Mrs. Henderson at that time paid Mr. Henderson $600, which he used to acquire an undivided one-half interest in the property which he then occupied as a home. This payment was made by bank check and was endorsed "full settlement of Property rights." The agreement recited that each of the parties was a resident of Nebraska and was entered into in this state.

Thereafter about January 1, 1940, the parties resumed the marriage relation and lived together until about November 1, 1940, when they again separated and lived apart until Mrs. Henderson's death. Causes for the two separations are not shown.

On January 6, 1941, Mrs. Henderson conveyed a part of her real estate to one Stute. Mr. Henderson joined in the conveyance, saying to the notary at the time: "I and Mrs. Mary Henderson has had writings. She has got her stuff and I have got mine, and I don't want anything to do with hers."

On January 6, 1941, while living apart from her husband, Mrs. Henderson purchased one parcel of real estate involved in this action.

Mrs. Henderson died intestate, a resident of this state, on August 1, 1943. Mr. Henderson died testate, a resident of this state, on August 19, 1943. The estate of each is being probated. Debts of the estates and costs of administration are not involved here.

The property settlement agreement recited that the par-

ties had decided "to live seperately and apart and to discontinue to maintain a home as husband and wife"; that the parties were possessed of real and personal property "in their own right" and desired to "preserve said property and save needless waste there—of in litigation". The settlement recited that in consideration of $600 paid by Mrs. Henderson to her husband and the execution to him by her of a quitclaim deed to described real estate, Mr. Henderson "relinquishes all interest he now has or may at any time acquire to any property" of Mrs. Henderson; and that Mr. Henderson "agrees to and hereby does" execute a quitclaim deed to Mrs. Henderson of described real estate. It further was agreed that "this settlement is a full, final and complete settlement of all claims and demands that either of the parties hereto may have against each other or any property either real or personal now owned by either of the parties hereto or which may be hereafter acquired by either of said parties; that all of the property now owned" by Mrs. Henderson "or which she may hereafter acquire, both real and personal, shall be clear and free from any claim of the party of the second part whatsoever, and any property either real or personal now owned" by Mr. Henderson "or that may be hereafter acquired by him, either real or personal, shall be free of any claim or demand of any nature whatsoever of" Mrs. Henderson.

The settlement further provided that in case an action for divorce was instituted by either of the parties, the cost shall be paid by the party instituting the proceedings and that if either party employed an attorney "in said divorce proceeding" he was to pay his own attorney and, in case a divorce action was instituted by one of the parties, the other party "agrees not to in any manner contest said proceeding." It further was agreed that if either party desired to sell any of his or her property "before decree of divorce is granted", the other party would join in the conveyance "without any consideration." The agreement was acknowledged before a notary and promptly filed for record.

Neither party obtained a divorce, nor is it shown that a divorce action was instituted.

The quitclaim deed in the usual form from Mr. Henderson to his wife, of the same date as the agreement, recited a consideration of $600 "and full and complete settlement of property rights" and described the real estate then owned by Mrs. Henderson. It was acknowledged before a notary and promptly filed for record.

Plaintiff contends that the property settlement agreement was entered into for the sole purpose of giving each party exclusive control of the property then owned by each; that neither party relinquished his right of inheritance in the property of the other; that by resuming marital relations, the parties abrogated the agreement; and further that the agreement was one to facilitate divorce and was accordingly against public policy and void; and that a one-fourth interest in this property descended to Mr. Henderson as surviving spouse and that plaintiff, as residuary devisee, is now the owner thereof. He prays for a decree confirming that right and for partition. Defendants contend that because of said agreement and quitclaim deed, Mr. Henderson was not one of the heirs and accordingly plaintiff has no interest in the real estate, and pray for a decree confirming their ownership as sole heirs at law of Mrs. Henderson. Both parties pray for equitable relief.

The trial court found for the defendants, entered a decree confirming their ownership and denying the prayer of plaintiff.

We go first to the principal question presented here, which is: Do a husband and wife have the legal capacity to contract with each other, whereby one or both surrender his or their rights of inheritance in the property of the other? In *Jorgensen v. Crandell*, 134 Neb. 33, 277 N. W. 785, it was held: "Whether or not a husband and wife may contract with each other under modern statutes depends upon the nature of the statute in force in the jurisdiction whose law governs the occasion and the construction that the courts of such jurisdiction put upon the statute applicable."

Subsequent to the entering of the decree in the district court, we decided the case of *Smith v. Johnson*, 144 Neb.

769, 14 N. W. 2d 424. It there was held that "Postnuptial contracts entered into between husband and wife while residents of this state in which they settle their property rights, including their respective rights of inheritance in the property of the other, are not authorized by express statute and are invalid and unenforceable." That decision rests upon the proposition that rights of inheritance in Nebraska are controlled by statute; that the legislature has prescribed the methods whereby rights of inheritance may be barred; and that barring by postnuptial contract is not one of the methods provided.

Section 30-101, R. S. 1943, is the statute of descent applicable here. It provides, so far as relevant here, that real property (1) which has not been lawfully conveyed, or (2) which has not been sold under execution or judicial sale, or (3) which has not been lawfully devised, shall descend, where the survivor is not the parent of all the children of the deceased and there are one or more children of deceased living, in a one-fourth part to the surviving husband or wife. Under this statute, the plaintiff claims that a one-fourth part of the real estate descended to Mr. Henderson, and by will was devised and passed to plaintiff. Section 30-105, R. S. 1943, provides that the right of inheritance of the husband or wife may be barred (1) by conveyance, and (2) by sale under execution or other judicial sale. Section 30-107, R. S. 1943, provides that where the deceased husband or wife by will devises real estate to the survivor or makes other provisions for the survivor, the survivor may elect to take the land devised or provision made, or take under the provisions of the statute for descent and distribution. It thus will be seen that the legislature has carefully protected the right of inheritance in real property, unless it be surrendered or lost in one or more of the manners specified.

The legislature also has provided that "A man or woman may also bar his or her right to inherit part or all of the lands of his or her husband or wife by a contract made in lieu thereof before marriage." R. S. 1943, sec. 30-106.

This latter provision clearly excludes the barring of the right of inheritance by a postnuptial contract. The legislature having carefully safeguarded the right of inheritance, and provided the method or methods by which it may be barred, must necessarily be held to have intended that the right cannot be barred otherwise. Accordingly, as was held in *Smith v. Johnson, supra,* the postnuptial contract here relied upon by defendants is invalid and unenforceable.

It is to be noted further that the provisions of sections 30-101, 30-105, 30-106, and 30-107, R. S. 1943, hereinbefore discussed, apply alike to husband and wife. The legislature also has provided that "A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." R. S. 1943, sec. 42-202. By these several acts the legislature has placed a married man and woman on a parity with reference to the subject matter of the acts.

It is argued, however, that Mr. Henderson conveyed his interest in his wife's property to her by quitclaim and therefore he barred his right of inheritance. It is not shown that he had any interest in his wife's property at that time, other than the right of inheritance. But, assuming that he had an interest that could be conveyed to his wife, of necescity when that title passed from him to her, his right of inheritance attached thereto concurrently with the vesting of title in her. Accordingly, it must be held that the right of inheritance was not barred by the quitclaim deed which was executed and delivered at the time of the contract.

But defendants, arguing that the contract may be enforced, rely upon the decision in *In re Estate of Lauderback,* 106 Neb. 461, 184 N. W. 128. The decision there is that where the parties to a marriage contract find it impossible to dwell together in harmony and unity because of misconduct of one of the parties justifying a legal separation, a contract, which provides for immediate separation

and for the settlement of all the property rights of the parties, in which each relinquishes all rights in and to inherit the property of the other, will be enforced with respect to property rights if the contract is fair and equitable and has been observed by both parties until the death of one of them. The parties in the *Lauderback* case did not present the question that was determined in *Smith v. Johnson, supra,* and followed here, upon which it is held that the contract, here involved, is invalid and unenforceable.

In *Erb v. McMaster,* 88 Neb. 817, 130 N. W. 576, we determined a case where before marriage an oral agreement was made with reference to the interest of each of the parties in the property of the other. It was reduced to writing immediately after the marriage. After the death of the wife, the husband asserted that the contract was void under the statute of frauds. We there held: "Even if the contract were wholly invalid, which we do not decide, under these circumstances the plaintiff is estopped to allege its invalidity."

In *Sovereign Camp, W. O. W. v. Billings,* 107 Neb. 218, 185 N. W. 426, it is suggested, but not determined, that property rights springing by operation of law from the marriage relation may be barred by estoppel.

In *In re Estate of Holmberg,* 108 Neb. 382, 187 N. W. 903, the husband obtained a decree of divorce, in which alimony was awarded the wife. Before the decree became final, the wife through the medium of a quitclaim deed released the husband of all claims, rights and interests in his property arising out of the marriage relation. There, a divorce having been granted, misconduct justifying legal separation was shown. It also was shown that the parties had not lived together before the divorce, nor at any time afterward. The husband died before the decree became final, and it was held that the divorce decree never became effective. *Holmberg v. Holmberg,* 106 Neb. 717, 184 N. W. 134. Thereafter the widow asked for an allowance during the settlement of the estate. It was held that the widow was estopped by the agreement, and support money was denied.

The *Lauderback* case was relied upon as an authority for the decision.

In the *Erb* case we held the husband estopped to assert the invalidity of an antenuptial contract. In the *Holmberg* case we held the wife estopped to assert the invalidity of a postnuptial contract that met the conditions as to cause, separation and surrender of property rights laid down in the *Lauderback* case, there being no showing as to the wife's separate estate and she having released all rights to the husband's property. The rule applicable to the wife must, under our statutes cited herein, apply also to the husband.

Accordingly, it follows that, where the heirs of the deceased wife bring the contract, as to cause, terms and performance, within the holding of the *Lauderback* case, estoppel prevents the surviving husband from asserting the invalidity of the postnuptial contract.

It is the rule that "An heir stands in privity with an ancestor, and an estoppel enforceable against the ancestor is likewise enforceable against the heir." *Jorgensen v. Crandell, supra.*

Accordingly, the question is: Have the defendants brought their case within the requirements of the rule announced in the *Lauderback* case? Obviously they have not, for they have neither pleaded nor proved that there was misconduct of one of the parties justifying a legal separation. But defendants answer this with the contention that a valid reason for a separation will be presumed from the failure of the adverse party to allege the nonexistence of such a valid reason. We see no merit to this contention. To so hold would be to materially modify and relax the rule. Defendants plead the contract and rely upon it to bar the claim of the plaintiff. It was incumbent upon them to plead and prove the facts that made their defense good. But we do not rest the decision on this question upon that ground alone. It was advanced in the *Lauderback* case that such a showing was essential to contracts of this nature. That contention was controverted. We there held that such a showing was essential. The rule in the *Lauderback* case re-

quires that there exist at the time of the postnuptial agreement those conditions upon which one of the parties could successfully institute a divorce proceeding and secure a separation decree, with the resultant allocation of property rights by the court. The standards there required should not be lowered. Consistent with this holding we, in *Smith v. Johnson, supra,* denied a plea of estoppel where there was neither a separation nor misconduct of either party justifying a legal separation. The plea of estoppel must be denied here.

In this view of the case, it becomes unnecessary to consider the contention of the plaintiff that the contract does not renounce rights of inheritance; that it was abrogated by a resumption of the marriage relation; or that it was void because entered into to facilitate a divorce.

The judgment of the district court is reversed and the cause remanded with directions to enter a judgment that the plaintiff is the owner of an undivided one-fourth interest in the property involved, confirming his title thereto, and granting him appropriate relief based upon that finding.

REVERSED.

CHAPPELL, J., dissents.

PAINE, J., dissenting.

Because of a firm conviction that the majority opinion in this case is unjust and inequitable to the heirs of Mary J. Henderson, in taking from them a one-fourth interest in the real estate of which their mother had died seized, and for which she had paid her husband $600 cash for a quitclaim deed releasing all his interests therein, I respectfully dissent, and will review the record to set out some of the important facts in greater detail.

This was an appeal by plaintiff from a decree dismissing his petition for the partition of certain real estate and confirming the title thereof in the defendants.

The petition alleged the death of Mary J. Henderson, intestate, and described the property that she owned, and said that her heirs were her husband and a son and daugh-

ter; that the plaintiff was the sole legatee of all the interest in said real estate belonging to the deceased husband, to wit, an undivided one-fourth interest therein, and prayed for partition of said real estate.

The defendants in their answer admit the death of their mother, Mary J. Henderson, intestate, on August 1, 1943, and admit the death of her husband 19 days thereafter. The defendants then allege that the parties entered into a property settlement, in which each relinquished all interest in the property of the other, and executed quitclaim deeds in accordance therewith, and attach to the answer copies of said settlement and deeds, and by reason thereof the husband relinquished all interest in his wife's property, and was not one of her heirs.

The reply admits the property settlement and the delivery of the deeds, but contends that nothing in said agreement released or relinquished the right of inheritance to the property of the other. It is also alleged that, after executing said agreement, the parties became reconciled, resumed marital relations, and lived together for some time, and disregarded said agreement, when they again separated.

The decree of the district court found that plaintiff was not the owner of, nor entitled to any interest in, the real estate involved, and the prayer of the petition was denied, costs taxed to plaintiff, and title to the real estate confirmed in the defendants.

The assignment of errors sets out that the judgment of the court is contrary to the evidence and the law.

Alonzo J. Henderson and Mary J. Henderson were married June 25, 1936, at Goodland, Kansas, he being 76 years old, and she a little younger. Mary J. Henderson had at that time two adult children by a former marriage, John Wakefield and Annie Thompson, who are defendants in this case. Alonzo J. Henderson had an adult daughter by his former marriage, Frances Henderson, and also a nephew, Clifton Focht, who is the plaintiff herein.

At the time of their marriage Mrs. Henderson owned con-

siderable real estate in Dundy county, some of which she had acquired from her first husband, and the balance from her sister's estate, while Mr. Henderson owned a half interest in a house and small tract of land south of the depot in Benkelman.

The parties lived together for a year and five days after their marriage, and separated July 1, 1937. On August 11, 1938, after they had been separated over a year, they met at the office of Leona I. Latham, an attorney, and entered into a property settlement and separation agreement. The first provision of this agreement was that, in consideration of $600 cash paid by Mary J. Henderson to Alonzo J. Henderson, he agreed to give a quitclaim deed to her of all his interest in all of her real estate, and she relinquished and quitclaimed to him all of her interest in his half-interest in his home place. The check, exhibit No. 4, which she gave for the $600, stated it was "For full settlement of Property rights," and he gave this $600 check to Jesse Mowry to buy the other half-interest in his home place.

The parties lived separate and apart until January 1, 1940, when they were reconciled, and these elderly people lived together about nine months, but nothing was done about the separation agreement, nor did he repay to her the $600, and when they finally separated the second time, October 1, 1940, no new agreement of any kind was made, and there was never any attempt made by either of them to secure a divorce. They lived separate and apart two years and ten months before her death.

Their property settlement agreement provided in the last clause, "in case either party hereto desires to sell any of his or her property before decree of divorce is granted the other party agrees to join in deed of conveyance without any consideration", and in strict accordance therewith Alonzo J. Henderson, after they had separated the last time, went into the State Bank of Benkelman on January 6, 1941, and joined in a deed which his wife had executed and left there the week before, conveying 1,120 acres of her land for $3,600. The cashier, who was the notary, testified that at that

time Mr. Henderson said to him: " 'Yes,' * * * 'I'll sign it.' * * * 'I and Mrs. Mary Henderson has had writings. She has got her stuff and I have got mine, and I don't want anything to do with hers.' " In the same way, he executed another deed for her when she sold 160 acres to Albert Hansen, all in strict accordance with their property settlement.

Mary J. Henderson died on August 1, 1943, intestate and owning all the tracts of real estate set out in the petition, none of which land was acquired by their joint efforts.

Alonzo J. Henderson died August 19, 1943, testate, and in his last will, made October 25, 1941, he gave his daughter one dollar and all the remainder of his property to his nephew, Clifton Focht, the plaintiff herein, and in this will he did not mention his wife, which is proof that he considered their separation agreement still binding upon him.

Two years and five months after their final separation, in March, 1943, he had a talk about their property with his brother John, who testified: "Well, all that I know about it that he told me was that he had received six hundred dollars in settlement in a contract; that they were done with each other's business; and that they wasn't to bother each other. As far as I know that's all he told me."

The instrument, exhibit No. 2, was entitled "Property Settlement," and recites that the wife is paying to the husband the sum of $600, in consideration of which he will give her a "Quitclaim Deed to the following described real estate," which money was paid and the deed made and delivered by the husband at the time, and as a part of the property settlement, and in this deed the grantor states that neither he nor any person in his behalf "shall or will hereafter claim or demand any right or title to the premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred." Such deed, together with the property settlement, was duly recorded in the office of the county clerk before 9 o'clock the next morning.

The fact that these parties went back to living together for a few months, some months after the property settle-

ment was entered into, would not set aside this property settlement, for there is no evidence that either of these parties intended that to be the effect of their living together, but each by their actions indicated that each was still firmly bound thereby.

There has never been any statutory inhibition against the transfer by a deed, from one spouse to another, of all the interest of the grantor in the property conveyed, and where it rests upon a good and valid consideration it should be enforced, and recently the legislature has stamped approval upon deeds from husband to wife by section 76-119, R. S. 1943.

"A postnuptial agreement between husband and wife as to, or settlement and adjustment of, property rights and interests, whereby one spouse settles or agrees to settle certain property on the other, agrees to release his or her rights and interests, as surviving spouse or otherwise, in the estate of the other, * * * or whereby they agree to divide property between them, although void and of no effect at common law is valid and enforceable in equity, * * * ." 26 Am. Jur., sec. 318, p. 914.

"The acts of a party to a separation agreement in accepting and retaining benefits thereunder after acquiring knowledge of facts constituting a ground for annulling it precludes him or her from attacking its validity or having it set aside or recovering property disposed of under it, it being held that the principles of both estoppel and ratification are applicable." 42 C. J. S., sec. 604, p. 191.

The majority view in many jurisdictions is, since the passage of statutes enlarging the rights and powers of married women, a postnuptial release by a husband to his wife of an interest in her property on her death is held to be valid, if it is fair and equitable, and supported by an adequate consideration. See Annotation, 49 A. L. R. 116, which cites cases from the courts of more than half of the states of the Union in support of this rule.

"It is now well-settled law, with the exception of New Hampshire, and possibly North Carolina, in both the Unit-

ed States and England, that agreements for separation are valid and enforceable so far as property rights therein contracted for are concerned. The early English cases were *contra*, but these have long since been overruled." Annotation, 12 L. R. A., N. S. 848.

"Husband and wife had right, without violating any principle of public policy, to enter into separation agreement, which was free of fraud and duress, for equitable disposition of their property one to the other." *Estate of Wise*, 64 Pac. 2d 594 (99 Colo. 562). See, also, *Briggs v. Chamberlin*, 47 Colo. 382, 107 Pac. 1082, 135 Am. St. Rep. 223.

"It must be borne in mind, however, that the general rules above given apply in the main to simple separation agreements containing executory provisions. There is an essential difference between such an agreement and a separation settlement providing for a division of property. The former may be abrogated 'by a subsequent reconciliation and cohabitation; the latter is not." Lindey, Separation Agreements, 75.

In *Daniels v. Benedict*, 8th Cir., 97 Fed. 367, Circuit Judge Sanborn held: "Subsequent cohabitation does not abrogate an agreement of separation between husband and wife, unless such is the intention. Where an agreement expressly provided that it should remain in force although the parties should again come together and live as husband and wife, occasional visits and cohabitation cannot be considered as establishing such an intention."

It is argued that the general rule is that, when the parties become reconciled and again live together, the effect is to annul the agreement. Annotation, 40 A. L. R. 1227 and two Nebraska cases are cited in support thereof. However, the limitations to this rule are set out at length in the same annotation, because courts cannot make or unmake contracts, but they can only determine the effect of express or implied agreements made by the parties themselves. When the parties themselves plainly show by their acts that they are still bound by their agreement, the resumption of the marriage relation will not operate to rescind a part of the

agreement based on an independent consideration. See *Edwardson v. Edwardson*, 229 Mich. 66, 201 N. W. 223.

It is said in 17 Am. Jur., sec. 735, p. 552: "Such reconciliation and resumption, it is held, ¹do not warrant the court in deeming the contract avoided any further, if at all, than its terms, taken in connection with the situation and conduct of the parties, indicate their intention to avoid it." In support of this statement they cite the case of *Hagerty v. Union Guardian Trust Co.*, 85 A. L. R. 417 (258 Mich. 133, 242 N. W. 211), wherein it is said: "An agreement between husband and wife upon their separation which, after listing all property owned by them jointly or individually, provided for a specific division thereof by conveyances between them, and that the share received by the wife should be in full settlement and release of all claims against her husband, is not avoided by the mere fact of reconciliation and resumption of cohabitation." See, also, *Bulke v. Bulke*, 173 Ala. 138, 55 So. 490; *In re Singer's Estate* (233 Pa. St. 55, 81 Atl. 898), Ann. Cas. 1913A, 1326, citing many English and American authorities; *Kohler v. Kohler*, 316 Ill. 33, 146 N. E. 476.

"Certain provisions of a contract of separation, or of instruments executed in pursuance thereof, such as provisions for a settlement or fixing the property rights of the parties, may expressly or impliedly show the intention of the parties that the rights and obligations created and fixed thereby shall continue irrespective of a reconciliation, and, where such is the case, these provisions are not avoided by a subsequent reconciliation." 42 C. J. S., sec. 601, p. 186.

"In jurisdictions where husband and wife may freely contract with each other, they may, of course, enter into a valid property settlement as between themselves independent of the question of separation. In such a case the agreement partakes of the nature of an ordinary settlement to end controversies, and may be given effect as such. It has been held that where the primary purpose of the agreement is to settle property rights, its validity is not impaired by the fact that it is entered into with a view to a later separation." Lindey, Separation Agreements, 49.

"Postnuptial agreements, fairly and understandingly made, settling property rights between husband and wife, and binding upon them whether or not an action for divorce may be instituted, are not against public policy and are enforceable." *Perkins v. Perkins,* 154 Kan. 73, 114 Pac. 2d 804.

A case very similar to the instant case, except that here a nephew of the deceased husband attempts to get an interest in the wife's estate, is the case of *Rash v. Bogart,* 226 Ala. 284, 146 So. 814. The issue in this case is whether a postnuptial and property agreement between husband and wife shall be given effect in equity, in bar of the right of the widow, after the husband's death, to dissent from his will, and take dower, homestead, and exemptions of personalty, or otherwise share in his estate. Leroy Rash and Sarah Jane Gentry were married in March, 1920, he being 73 years old and his wife 65 years old. After living together some ten years they separated. About a month after separation, they met in the First National Bank of Stevenson and had an agreement drawn up, which they executed, and Mr. Rash paid the $1,000 therein agreed. Mr. Rash died July 8, 1931. The parties were never divorced. The court held:

"After separation, equity does not look with disfavor on friendly adjustment of property rights between spouses out of court, but, such contracts when supported by valuable consideration, are sustained in equity as other contracts. * * *

"Where, after execution of husband's will providing legacy of $1,000 for wife, wife agreed in valid separation agreement, in consideration of present payment to her of $1,000 in cash, to release all her claims to her husband's estate, payment of $1,000 under agreement *held* to constitute ademption of wife's legacy in husband's will."

It is further argued by the appellant that, as this property settlement in the case at bar contained a provision in which each agreed not to contest a divorce proceeding brought by the other, this provision makes the entire contract void.

But this broad, general statement is also subject to limitations. "Provisions in a separation agreement * * * which relate to a settlement and adjustment of their property rights * * * will not be invalidated by a provision in the agreement as to a divorce where such provision seems to carry within it its own consideration and has no special reference to the consideration for any other provision of the contract. Elimination of such provision will not impair the contract as a whole or in any wise affect any other provision of it." 17 Am. Jur., sec. 727, p. 546.

We will now examine several of our Nebraska cases, and will find that the majority of them are in line with the leading authorities from other jurisdictions.

"A contract between husband and wife, made after and in consequence of severance of the marital relation and permanent separation, and providing for a division of property, and containing mutual releases of rights and obligations relative thereto, will be respected by the courts as presumably fair and valid, and a just and equitable adjustment of the matters of which it treats. But the courts will scrutinize such transactions closely, without too much regard for formal rules of pleading and procedure, and see to it that no unconscionable advantage is taken through fraud or intimidation, or even by reason of ignorance, passion or improvidence." *Hiett v. Hiett,* 74 Neb. 96, 103 N. W. 1051.

"Where a husband and his wife are permanently separated, and the latter has legal grounds for a divorce, they may agree upon a settlement of their property rights, and provide by contract for the support and maintenance of the wife, and if the provisions are fair and reasonable the agreement may be enforced by the courts." *Amspoker v. Amspoker,* 99 Neb. 122, 155 N. W. 602.

"A valid postnuptial contract between husband and wife, which provides that each relinquishes all rights to the property of the other and releases and waives all right of each to inherit from the other, if observed by both until the death of one of them, will debar the survivor from receiving

from the estate of the other the articles of personal property and allowance which the statute provides for the surviving spouse." *In re Estate of Lauderback,* 106 Neb. 461, 184 N. W. 128.

Three quotations from a late Nebraska case are helpful, as follows:

"We said as early as *Furrow v. Athey,* 21 Neb. 671, 33 N. W. 208: 'A deed of conveyance of real estate, executed by the husband directly to the wife, in the absence of fraud, and when neither the rights of creditors nor subsequent purchasers intervene, will convey to her such real estate without the intervention of a third party as trustee.' The circumstances in the case at bar disclose nothing but good faith. The rights of creditors and subsequent purchasers or innocent parties are not involved. The language of the contract constitutes a grant each to the other *in præsenti.*"

"An heir stands in privity with an ancestor, and an estoppel enforceable against the ancestor is likewise enforceable as against the heir. 21 C. J. 1182."

"It was made, we must assume from the evidence, to promote peace and harmony between the parties and their respective children, and was without disadvantage to any of the parties." *Jorgensen v. Crandell,* 134 Neb. 33, 277 N. W. 785.

For many years in Nebraska it has been considered approved practice for counsel to carefully analyze all of the property interests of a husband and wife who were anticipating a separation, and to secure the consent of each to a property settlement in which the rights of each were carefully protected and safeguarded. If later on a divorce was granted to either party, such property settlement was submitted to the trial court, and if upon careful examination the court found that the same constituted a fair and just division of their property interests, our Nebraska courts have in the past invariably approved such settlements. This always has the advantage of removing what in some cases becomes a bitter contest over their property holdings and their respective rights therein.

In a case where two very elderly people are married, each having children by former marriages, it is often found that their diverse property interests, and the possibility of their children being jeopardized in their respective inheritances, result in unpleasant discussions and family quarrels. To avoid this, such a husband and wife often find that their way out of such an unpleasant situation can be met by a well-drawn property settlement, under the terms of which they sign deeds to each other, supported by valid consideration, which deeds are recorded, and thus dispose of all family arguments as to their respective property interests. Such a valid agreement, based upon adequate consideration, should not be lightly set aside by the court because the old parties may temporarily live together a while, followed by a final separation for several years before their death.

This has been the custom and rule in Nebraska for many years, and until the case of *Smith v. Johnson,* 144 Neb. 769, 14 N. W. 2d 424, such agreement has always been given due weight and consideration by our courts. In that very recent case, such an agreement is held to be invalid on the ground that, while section 30-105, R. S. 1943, says that the right of a married man or woman to inherit a part or all of the estate of which his or her spouse was seized of an estate of inheritance at any time during marriage may be barred by a conveyance executed by such husband or wife while a resident of the state, yet the next section, 30-106, which is concerned with the limitations of an antenuptial contract, happens to be silent in respect to a postnuptial contract. The writer of this dissent is convinced that this is a very small peg upon which to hang a decision which overturns an established rule and unjustly deprives the heirs of deceased people of rights which their ancestors thought had been legally settled by the former decisions of this court.

In the case at bar, the two children of Mrs. Henderson were obviously not parties to the postnuptial property settlement which their mother made in good faith, and was it not legal, valid and binding, and supported by an ample consideration of $600, which their mother paid in cash?

Setting aside this contract of their mother invades the rights of her heirs, and deprives them of one-quarter of the inheritance they had in their mother's estate.

The trial court found generally in favor of the defendants, and that the plaintiff, Clifton Focht, nephew of Alonzo J. Henderson, is not the owner of any part of, or interest of any character in, the real estate he seeks to partition, and therefore quieted the title of said real estate in the defendants, John Wakefield, son, and Annie Thompson, daughter, of Mary J. Henderson.

I have reached the conclusion that such decree and judgment is amply sustained by the record and the law, and should have been affirmed. In my opinion, the law should have been announced to be as follows:

(1) In a postnuptial property settlement, where deeds have been exchanged and a valuable consideration paid, it would be inequitable to permit a devisee of one of the parties to assert marital rights in said property so conveyed;

(2) Where there has been a reconciliation for a few months after making such property settlement, such resumption does not warrant the court in deeming the contract avoided, any further than its terms taken in connection with the situation and conduct of the parties indicate their intention to avoid it; and

(3) Provisions in a postnuptial separation agreement for the transfer of property by deed, upon payment of full consideration therefor, will not be invalidated by a provision not to contest any divorce action which might be brought, where the elimination of this provision which is void as against public policy will not impair the provision relating to the transfer of property by deeds which had been promptly carried out and performed.