EDWARD M. CHAMBERS, APPELLEE, v. HELENE M. CHAMBERS, APPELLANT.

51 N. W. 2d 310

Filed January 11, 1952. No. 33044.

*Neighbors & Danielson,* and *Charles A. Fisher,* for appellant.

*Edwin D. Crites, A. W. Crites, Straight Townsend,* and *Neal D. Youmans, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.
This is an action for divorce by Edward M. Chambers, plaintiff, against Helene M. Chambers, defendant, in the district court for Scotts Bluff County, Nebraska. In

the action the defendant filed a cross-petition for divorce. The district court granted a divorce to the defendant. The defendant has appealed from a part of the decree. The plaintiff has cross-appealed from a part of the decree. The defendant is the appellant and cross-appellee and the plaintiff is appellee and cross-appellant.

Neither party has appealed from that part of the decree which grants to defendant a divorce from the plaintiff. The substance of defendant's appeal is a contention that the allowances by way of support money pendente lite, alimony, and division of property were insufficient. The substance of plaintiff's cross-appeal is that the allowances made were improper and excessive.

It is true that there are assignments of error in appellant's brief dealing with subjects other than the matter of allowances. They may not however be reviewed here. Three of them relate to matters which have been waived, if they constituted error, by affirmative act of the appellant.

After appellee commenced the action in Scotts Bluff County the appellant challenged his right to maintain the action on the ground that there was another such action pending in Dawes County. The challenge was made successively by special appearance, demurrer, and plea in abatement. These were overruled whereupon appellant filed answer and cross-petition. By the cross-petition she prayed for a divorce. She thereby invoked the jurisdiction of the court. Upon this invocation the decree in her favor was granted.

This court has said: "A party cannot predicate error upon a ruling which he procured to be made." Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367.

The fourth assignment challenges refusal of the court to strike parts of the reply and the answer to the cross-petition. The contention here is that these contained allegations not proper since they amounted to alleged

grounds for divorce not contained in the original cause of action.

Whether or not this was error is not important here as is clear from the fact that the court awarded no relief in favor of appellee thereon.

Before proceeding to a consideration of appellant's assignment of error relating to the matter of allowances it appears necessary to dispose of a contention of the appellee with reference to a certain agreement relating to property and rights which had been entered into between the parties.

The parties were married on May 2, 1940. Trouble between them arose and on December 21, 1948, an action for divorce was instituted. During the pendency of that action and on January 25, 1949, the parties entered into a separation agreement. The parties, after declaration that a separation had taken place which would continue, entered into an agreement wherein upon valid considerations their estates became separate and each was relieved from any further obligation to the other flowing from the marriage relation or from the laws of descent and distribution.

Appellee fully performed under the agreement. After this performance the parties became reconciled and resumed the marriage relationship. The appellant however did not return to appellee any of the considerations which she had received under the agreement.

After this reconciliation took place trouble again arose and the present action was instituted. The appellee contends that the agreement previously entered into, since appellant did not return the considerations, is binding and in full force and effect and that appellant is barred from asserting any right to alimony or division of property in excess of or contrary to provisions of the agreement.

The validity of an agreement such as the one entered into between the parties here is recognized if it is fair and equitable; if there has been conduct of a party jus-

tifying legal separation; if the parties immediately separate; and if the provisions of the agreement are observed by the parties. In re Estate of Lauderback, 106 Neb. 461, 184 N. W. 128; Smith v. Johnson, 144 Neb. 769, 14 N. W. 2d 424; Focht v. Wakefield, 145 Neb. 568, 17 N. W. 2d 627.

It is not urged here that the agreement when entered into was not fair and equitable. The parties themselves considered at the time that there were legal grounds for separation. There was a separation and the considerations for the agreement passed. At the time, under the authorities cited, the agreement was valid and binding upon the parties.

It will be observed from an examination of the authorities cited that the validity of such an agreement depends upon the observance of the terms of the agreement. One of those conditions is that the parties shall be separated. This condition was not observed. The parties became reconciled and re-established the relationship wherein this court has declared no valid postnuptial agreement may be entered into.

In Smith v. Johnson, *supra,* it was said: "The foregoing cases are what are commonly called separation agreement cases. They do not recognize the right of husband and wife to enter into a postnuptial agreement barring their respective rights in the other's real property while the complete marriage relation exists."

Such agreements are held invalid because of common law prohibition and on the grounds of public policy. It appears to be a necessary corollary that when a separation agreement is validly entered into but thereafter the parties restore themselves to the complete marriage relation such an agreement becomes invalid and unenforceable.

It is concluded therefore that the agreement in question may not be regarded as determinative of the rights of the parties in this divorce action.

In determining the question of alimony and division

of property resort must be had to the following rule: "In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine the rights of the parties and make an award that is equitable and just." Mangiameli v. Mangiameli, 153 Neb. 753, 45 N. W. 2d 910. See, also, Kroger v. Kroger, 153 Neb. 265, 44 N. W. 2d 475; Strasser v. Strasser, 153 Neb. 288, 44 N. W. 2d 508; Zoppelli v. Zoppelli, 153 Neb. 577, 45 N. W. 2d 599; Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139.

At the time of the marriage appellant was 34 years of age and appellee was 39. Both had been previously married. No children were born of the marriage. The parties lived together, except for a short period of time, from the time of the marriage until the commencement of this action which was November 25, 1949.

At the time of the marriage the appellee was engaged in the wholesale oil and grease business in Chadron, Nebraska. Appellant was operating her own business at the time. The business was the publication and distribution of a mimeographed advertising sheet known as Ad-Visor. There is no authentic evidence of financial productivity of either of these enterprises. Neither appears to have yielded high profits. The parties pur-

chased a considerable amount of furniture and household goods for the most part if not entirely on credit. The value at the time of purchase appears to have been about $2,000. There is no certainty as to how this indebtedness was liquidated but it appears reasonable to say that contribution was made thereto by both parties. Appellant sold the Ad-Visor for $3,750. After the marriage appellant purchased and for a time operated a newspaper known as the Panhandle Digest. This was later sold for $5,500. Also after the marriage appellant acquired an appliance store. It is known as the Budget Store. She still owned and operated it at the time of trial. The results of these three enterprises have not been shown.

After the marriage the appellee abandoned the oil and grease business and entered into the business of wholesaler of automotive parts, appliances, and supplies under the name of Ed Chambers Company. The Sidles Company purchased a 51 percent interest in this company. The company was incorporated and the name was later changed to the Sidles-Chambers Company. At the time of trial there were 920 shares of stock outstanding of which number appellee held 285 and his daughter 110. The shares held by the daughter according to appellee were a gift and we think the evidence reasonably discloses that they were at least under control of appellee.

The record fairly discloses that at the time of trial appellee had the following property and assets: 395 shares of stock in the Sidles-Chambers Company, a Cadillac automobile of the estimated value of $2,020, and life insurance policies amounting to $25,000.

What the stock was worth is problematical. The appellee estimated its value at not to exceed $125 a share. An officer of the company estimated its value at not to exceed $160 a share. The corporation has never paid any dividends to the stockholders although it showed a net profit for 1947 of $48,212.28, for 1948 of $34,979.71, and for 1949 of $14,647.46. How this profit was distributed

or applied is not clearly shown except as to one item. Appellee received ten percent of it as a bonus in addition to his salary. His salary was $600 a month or $7,200 a year.

In the record are exhibits from which testimony has been given as to the financial condition of the corporation but from this no reasonably accurate analysis can be made of that condition.

As liabilities appellee owed a balance of $7,300 to the First National Bank of Chadron. He owed Sidles-Chambers Company $11,671. He also owed the company on overdrafts approximately $650. This total is $19,621.

The amount of property and estate which the appellant had at the time of trial has not been clearly disclosed. She has not chosen to put this important information in the record. It is clear that she had $1,500 cash in a bank, the Budget Store of the probable value of about $8,000, household goods of the value of $2,000, and a Chevrolet automobile which cost $2,300. During the marriage she received $3,750 from the sale of the Ad-Visor and $5,500 from the sale of the Panhandle Digest. She received from appellee $15,000 under the separation agreement, which as has been pointed out herein was invalidated by resumption of the marital relationship, no part of which was ever returned. Under this same agreement she received a $5,000 insurance policy having a cash value of $2,710 which she surrendered later for its value at the time of surrender. She appropriated a savings account and savings bonds of the value of $4,200. Information as to the status of these items totaling $31,-160, except in very small part, has not been disclosed.

The evidence indicates that neither party contributed substantially to the business enterprises of the other. They operated their respective businesses separately and independently of each other.

The only subjects of substantial joint contribution were the purchase of household goods and equipment, the purchase of the above-mentioned savings bonds and the ac-

cumulation of savings amounting to $4,200, and the maintenance of the household.

Appellee paid nothing to appellant for her support or the maintenance of the home after July 1949.

In the decree herein the property and business of appellant are not mentioned but it is clear that her right to all of it has not been disturbed.

By the decree she was awarded permanent alimony in the amount of $24,000. On this was credited $15,000 and $2,750, this being the cash value of a life insurance policy at the time it was surrendered. These two items had been received by her under the postnuptial agreement and not returned after reconciliation. Also on this was credited $4,200 for war bonds and postal savings appropriated and never returned. This made a total of $21,950. Thus the balance owing was $2,050. In addition she was allowed attorney's fees in the amount of $2,000 and costs of the action.

It is the duty of this court in determining the matters before it on this appeal to arrive at a conclusion independent of that reached by the district court. Where, however, as in this case, the evidence is in conflict and uncertain the rule that where the evidence is in irreconcilable conflict on a material issue the court may consider the fact that the trial court observed the witnesses and their manner of testifying is peculiarly applicable. Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355; W. L. Phillips Sons v. Northwest Realty Co., 152 Neb. 808, 43 N. W. 2d 6; Strasser v. Strasser, *supra*.

Bearing this rule in mind and applying the general rule to be applied in the matter of division of property and fixing alimony, which rule was set forth earlier herein, we conclude that the award as fixed by the decree was equitable and just.

The decree of the district court is affirmed.

AFFIRMED.