In re Estate of Milton J. Kopecky, deceased.
John M. Kopecky, Personal Representative of the Estate
of Milton J. Kopecky, deceased, appellant,
v. Elizabeth Hall Kopecky, appellee.
574 N.W. 2d 549

Filed February 17, 1998.   No. A-96-1185.

Daniel D. Koukol, Alan M. Wood, and Linda W. Rohman, of Erickson & Sederstrom, P.C., for appellant.

Michael J. Lehan, of Kelley, Lehan & Hall, P.C., for appellee.

Miller-Lerman, Chief Judge, and Irwin and Sievers, Judges.

Sievers, Judge.

In this appeal, we address the validity of a postnuptial agreement executed 16 months after the parties were married but 6 years before the enactment of Neb. Rev. Stat. § 30-2316 (Reissue 1995), which provides that the rights of a surviving spouse "may be waived . . . before or after marriage, by a written contract, agreement, or waiver . . . ." The county court for Douglas County held that the postnuptial agreement at issue was invalid,

which decision allowed the surviving spouse to elect to take against the will.

## FACTUAL BACKGROUND

Elizabeth Hall Kopecky and Milton J. Kopecky, both of Omaha, were married September 27, 1968. After the marriage, Elizabeth, in late 1969 or early 1970, approached an attorney, Robert Green, who maintained an office in the same building where Elizabeth worked. She asked Green to prepare an agreement between her and her husband which would allow each of them to keep and dispose of their own property. Green identified the agreement he prepared and said it was signed by both Elizabeth and Milton on January 29, 1970, and notarized on that date. The agreement was received in evidence. The recitals in the agreement include that the "parties hereto have fully informed each other of their respective financial situations, including the amount of both real and personal property owned by each of them" and that they "desire to retain their separate estate [sic], despite the fact that they are married." The agreement provided:

> The husband may dispose of any and all property, both real and personal, as he sees fit at the time of his death or otherwise, and the wife hereby agrees to accept only such portions of the husband's estate as the husband may devise to the wife by Will or Codicil, regardless of any and all acts of the legislature of the State of Nebraska, whether presently or hereinafter enacted.

There was a comparable paragraph with respect to the wife and her property.

Milton died November 28, 1995, and a petition for formal probate of his will was filed December 5 of that year. The will attached to the petition was executed May 10, 1991, and left Elizabeth the sum of $5,000. Milton left his home to his son John M. Kopecky, as well as his furniture and fixtures and all of the shares of stock owned by Milton at the time of his death in Kopecky & Yates, Inc., a Nebraska corporation. Milton left the residue of his estate, which was not inconsequential, to his son John. Milton nominated John as personal representative of the estate, and John was appointed as such. Milton and Elizabeth also held substantial property in joint tenancy.

Elizabeth filed an election pursuant to Neb. Rev. Stat. § 30-2317 (Reissue 1995) to take 50 percent of Milton's estate. As personal representative, John, citing § 30-2316, responded by alleging that the previously mentioned postnuptial agreement of January 29, 1970, barred Elizabeth from making an election to claim any part of Milton's augmented estate. In reply, Elizabeth alleged that the statute relied upon by John was not effective until January 1, 1977, that it was not retroactive, and that the agreement was void.

The county court for Douglas County held a hearing on November 14, 1996, in which Green briefly testified and the agreement of January 29, 1970, was received in evidence. Counsel for Elizabeth moved to dismiss John's response to the petition for elective share on the ground that the agreement was illegal when signed and that there was no retroactivity in the probate code for statutory changes after the execution of the agreement. The trial court found that the postnuptial agreement of January 29 was contrary to public policy and the law of Nebraska at the time it was made, and therefore, the agreement was invalid and unenforceable. The court also stated that the statute relied upon by John to uphold the agreement was not retroactive and did not validate the agreement. John, as personal representative of Milton's estate, appeals to this court pursuant to Neb. Rev. Stat. § 30-1601 (Reissue 1995).

## ASSIGNMENTS OF ERROR

Restated from the brief, John assigns error to the trial court for determining that the postnuptial agreement was invalid and unenforceable. The other assignments of error merely assail the reasoning of the county court in reaching the conclusion that the postnuptial agreement was unenforceable.

## STANDARD OF REVIEW

Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995), are reviewed for error on the record. *In re Guardianship of Zyla,* 251 Neb. 163, 555 N.W.2d 768 (1996); *In re Conservatorship of Estate of Martin,* 228 Neb. 103, 421 N.W.2d 463 (1988). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the

law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Law Offices of Ronald J. Palagi v. Dolan,* 251 Neb. 457, 558 N.W.2d 303 (1997). On questions of law, an appellate court has an obligation to reach its own conclusions independent of those reached by the lower court. *In re Guardianship of Zyla, supra.*

## DISCUSSION

*Statute in Effect at Death.*

Older cases from the Nebraska Supreme Court, upon which Elizabeth relies, have held postnuptial contracts barring the right of inheritance invalid and unenforceable as violative of public policy and common law prohibitions. See, *Chambers v. Chambers,* 155 Neb. 160, 51 N.W.2d 310 (1952); *Focht v. Wakefield,* 145 Neb. 568, 17 N.W.2d 627 (1945); *Smith v. Johnson,* 144 Neb. 769, 14 N.W.2d 424 (1944). However, on January 29, 1970, when the postnuptial agreement was executed, Neb. Rev. Stat. § 30-106 (Cum. Supp. 1969) was in effect and provided:

> A man or a woman may also bar his or her right to inherit part or all of the lands of his or her husband or wife by a contract made in lieu thereof before marriage or after a second or subsequent marriage where one or both of the parties have children of a previous marriage, or where either spouse has been married previously and the other spouse has not been previously married. Such contract shall be in writing signed by both of the parties to such marriage and acknowledged in the manner required by law for the conveyance of real estate, or executed in conformity with the laws of the place where made.

Thus, by amending § 30-106, effective August 25, 1969, the Legislature authorized postnuptial agreements. The Legislature is deemed to be aware of existing Supreme Court precedent when it enacts legislation. *White v. State,* 248 Neb. 977, 540 N.W.2d 354 (1995). Therefore, the amendment of § 30-106, authorizing postnuptial agreements, had the effect of overruling the holdings of the Supreme Court in *Chambers, Focht,* and *Smith,* all of which had held postnuptial agreements void as against public policy. Elizabeth argues that the postnuptial

agreement was "invalid under the common law, violated public policy and was without the expressed authority of the legislature." Brief for appellee at 9. Clearly, this proposition is incorrect when one reviews the language of § 30-106. Thus, the state of the law in Nebraska with respect to postnuptial agreements as of January 29, 1970, the date Milton and Elizabeth signed their postnuptial agreement, was that such agreements were legal and enforceable when they related only to "lands" and when the parties' previous marital status fit within the confines of the statute.

### Subsequent Legislative Changes.

■ With respect to the further development of the law concerning postnuptial agreements in Nebraska, the Legislature adopted § 2-204 of the Uniform Probate Code in 1976, to be effective January 1, 1977. Section 2-204 of the Uniform Probate Code became § 30-2316, which provides:

> The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property, and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the surviving spouse.

This statute also provides that such a contract is not enforceable if the surviving spouse proves that the waiver was executed involuntarily or that it was unconscionable at the time of execution. With respect to proving a contract or agreement unconscionable, the statute provides that the surviving spouse would have to show (1) that there was not fair and reasonable disclosure of the property or financial obligations of the decedent, (2) that the surviving spouse did not voluntarily waive such disclosure, and (3) that the surviving spouse did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the decedent.

■ Elizabeth argues that the Nebraska Probate Code specifically provides at § 30-2901 that the code shall become operative on January 1, 1977. From this, Elizabeth argues that there is no statutory language or legislative intent to legalize the previously invalid and unenforceable postnuptial contract

between her and Milton. Elizabeth cites *Davis v. General Motors Acceptance Corp.*, 176 Neb. 865, 127 N.W.2d 907 (1964), for the proposition that the Legislature has the power to validate contracts which were illegal when made. The *Davis* court relied on the Restatement of Contracts § 609 (1932), stating that a bargain that is illegal when formed does not become legal by reason of a change in the law except where the Legislature manifests an intention to validate the bargain. Although we acknowledge the law from *Davis*, it does not apply here, because the requirement that the agreement be illegal is not satisfied. The postnuptial agreement of January 29, 1970, was not per se "illegal," because under § 30-106, postnuptial agreements, at least to a limited extent, had been legislatively approved effective August 25, 1969, shortly before the execution of the agreement on January 29, 1970.

Section 30-106 specifies a situation involving "a second or subsequent marriage where one or both of the parties have children of a previous marriage, or where either spouse has been married previously and the other spouse has not been previously married." Whether Elizabeth and Milton were within the category of persons who could execute a postnuptial agreement on January 29, 1970, according to the dictates of § 30-106, and then have the agreement be immediately effective if one of them were to die the next day is not revealed by the record. John's brief asserts that Elizabeth and Milton were subject to § 30-106 because Milton was a widower with two children and Elizabeth had never previously been married. But these facts are not in our record. However, in this case, for reasons to become apparent, it is sufficient that the Legislature, by January 29, 1970, had authorized postnuptial agreements, albeit in limited circumstances.

*Does Law in Effect at Time of Postnuptial Agreement or at Time of Milton's Death Control?*

By the time of Milton's death on November 28, 1995, § 30-2316, authorizing waiver by contract of a surviving spouse's "right of election," had been in effect for close to 20 years. In *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986), the husband's petition for an elective share was dismissed on the basis of an antenuptial agreement whereby the husband had waived his right to elect a statutory share. The *In*

*re Estate of Peterson* court held that the statute in effect when the wife died was controlling. In *In re Estate of Peterson*, the husband and wife were married July 25, 1969, and executed an antenuptial agreement 2 days before their marriage. The Supreme Court held that the county court had properly placed the burden of proof upon the husband to prove the invalidity of the antenuptial agreement. The husband also argued that § 30-106 (Reissue 1964), which was in effect at the time of the agreement, was controlling and, at worst, barred only his right to inherit real property and did not prevent him from claiming an elective share of the personal property in the wife's estate. The court observed that § 30-2316 (Reissue 1979) provided that the parties to a valid antenuptial agreement may waive the right to elect a share of both real and personal property of the deceased spouse. The court noted the argument of the wife's estate that there had been a previous judicial construction of § 30-106 which did not limit waivers under that statute to just "lands" but had extended waivers to personalty, citing *Kingsley v. Noble*, 129 Neb. 808, 263 N.W. 222 (1935), and *Andere v. Willsey*, 193 Neb. 698, 229 N.W.2d 46 (1975). However, the *In re Estate of Peterson* court found that it did not have to resolve whether an agreement under § 30-106 could waive inheritance of both real and personal property, because § 30-106 had been repealed, and that § 30-2316, the statute in effect at the time of the wife's death, was controlling.

The *In re Estate of Peterson* court, citing *In re Estate of Luckey. Bailey v. Luckey,* 206 Neb. 53, 291 N.W.2d 235 (1980), reasoned that the right of inheritance is created by statute and that what the Legislature creates, it may take away. The court in *In re Estate of Peterson*, citing *In re Estate of Enyart*, 100 Neb. 337, 160 N.W. 120 (1916), *overruled on other grounds, Kingsley, supra*, also held that there is no vested interest in a statute, that a change in the manner of disposition of estates of deceased persons may be made by the Legislature at any time, and that the law at the time of death determines the right and manner of disposition of estates. In a telling and succinct phrase, the court said that the husband "[does not] have a vested right to apply 1969 inheritance laws to a 1983 estate." *In re Estate of Peterson*, 221 Neb. at 803, 381 N.W.2d at 116.

In *In re Estate of Peterson*, 221 Neb. at 802, 381 N.W.2d at 116, the antenuptial agreement provided that each party waived all claims that he or she may have acquired by reason of the marriage in the other party's property or estate under the " 'present or future laws of Nebraska,' " including the right to elect against the last will and testament or codicil of the other party. The court found it significant that the parties by these terms had specifically agreed to be bound by future laws. The *In re Estate of Peterson* court recited the general rule that statutes in existence at the time of the execution of a contract become part of the contract, but the court found nothing to prevent the parties to a contract from agreeing to be bound with reference to future laws. In *In re Estate of Peterson*, 221 Neb. at 803, 381 N.W.2d at 116, the court said, "[The husband and the wife] agreed to be bound by future laws."

Although *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986), involves an antenuptial agreement and this is a postnuptial agreement, that difference is not significant, because when this agreement was executed on January 29, 1970, postnuptial agreements were no longer against the public policy of Nebraska. Granted, there were limiting conditions on the circumstances under which they could be used, but those conditions were later "loosened" by the Nebraska Legislature with the enactment of the probate code effective January 1, 1977, specifically § 30-2316. Milton and Elizabeth's agreement states:

> The husband may dispose of any and all property, both real and personal, as he sees fit at the time of his death or otherwise, and the wife hereby agrees to accept only such portions of the husband's estate as the husband may devise to the wife by Will or Codicil, regardless of any and all acts of the legislature of the State of Nebraska, whether presently or hereinafter enacted.

Elizabeth's agreement to accept only what Milton provided for her in his will, regardless of what the Legislature did, was obviously to have force in the future, and as in *In re Estate of Peterson*, the validity of this agreement is controlled by the statutory provisions in effect at the time of Milton's death. Whether the "future" would be 1 day or 25 years was not in the

power of the parties to know, but their agreement would in large part control the disposition of their estates when they died. Parties may contract to bind themselves as to disposition of their property in the future and with reference to the law in effect at the time of the triggering event—one of the parties' death. See *In re Estate of Peterson, supra.* Therefore, the conclusion of the county court that the agreement was invalid and unenforceable when made and that § 30-2316 is not retroactive to "save the validity of this agreement" was incorrect as a matter of law. At the time of Milton's death, postnuptial agreements were valid and enforceable under the law of Nebraska, and it is this law which applies to the agreement made January 29, 1970.

*Elizabeth's Additional Defenses.*

Elizabeth asserts that if the court determines that the agreement "is not illegal," then the agreement is unenforceable because its provisions do not provide a fair and reasonable disclosure of the property and financial obligations of Milton. She contends that at the time the agreement was made, she did not have, nor could she have reasonably acquired, adequate knowledge of the property and the financial obligations of Milton and that failure to disclose such constituted fraud.

As a second "affirmative defense" she asserts estoppel in that both she and Milton had been advised the agreement was illegal and "continued the marriage and conducted their lives and affairs as if there was no contract." As a third defense, Elizabeth asserts that the agreement, if enforced, should be enforced only with respect to the property which belonged to Milton before his marriage to her.

There was no evidence adduced on any of the three affirmative defenses except brief and mostly incidental testimony from Green, the attorney whom Elizabeth approached and who had prepared the agreement. He testified that he mentioned at some point, before the agreement was entered into, that the law was changing with respect to postnuptial agreements and that it was uncertain what would be possible in the future. He testified that he questioned whether the agreement, as of January 29, 1970, was an enforceable agreement. We note in passing that Green, in giving the above testimony, concluded with the statement,

"[B]ut the idea was to prepare an agreement the best that we knew how to try to give them the right to do this." The law is that the burden of proving the invalidity of an antenuptial agreement is on the party asserting its invalidity. *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986).

Consequently, the burden was Elizabeth's to prove one of her defenses so as to avoid the impact of the agreement. The county court trial record reveals that after the estate had introduced the agreement and Green's testimony, it rested. Elizabeth did not introduce evidence, but, rather, moved to dismiss the estate's reply to Elizabeth's petition for elective share on the grounds that the postnuptial agreement was illegal. After argument from counsel, the court found that the parties had entered into the agreement but incorrectly held that it was invalid and unenforceable. The county court was prepared to take evidence "regarding the elective share," but counsel for the estate asked that further proceedings be stayed until counsel for John, the personal representative, could prepare evidence regarding the assets to be included in the augmented estate or "until the appeal on the issue of whether or not the post-nuptial agreement is enforceable" was concluded. The court ruled that the proceedings would be stayed "until the appeal matter is undertaken and determined." Thus, although the burden of proof was on Elizabeth from the beginning on her "affirmative defenses," the sustaining of her motion had the effect of precluding the introduction of evidence on Elizabeth's defenses at that juncture. She is, however, entitled to now introduce evidence in support of her defenses. Therefore, we remand the matter for receipt of evidence upon Elizabeth's defenses and a determination of their validity by the trial court.

REVERSED AND REMANDED WITH DIRECTIONS.