SADIE R. ZOPPELLI, APPELLANT, V. ADOLPH E. ZOPPELLI, APPELLEE.

45 N. W. 2d 599

Filed January 12, 1951. No. 32866.

*Coufal & Shaw,* and *G. E. Hendricks,* for appellant.

*E. O. Richards,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a divorce action commenced in the district court for Deuel County by Sadie R. Zoppelli against

Adolph E. Zoppelli. The court granted the plaintiff a divorce and dismissed the defendant's cross-petition praying for a divorce. The plaintiff perfected appeal to this court.

The basis of the appeal is that the district court was in error in not awarding her the full and complete title to the real estate known as the home place, described as the south half of the southeast quarter of Section 12, Township 12 North, Range 44 West of the 6th P. M. The parties are agreed that division of the real estate and personal property otherwise has been settled between them to their entire satisfaction.

We shall refer herein to the parties as they appeared in the original action.

"An appeal lodged in this court from a decree rendered in a divorce action brings the case here for trial de novo." Nickerson v. Nickerson, 152 Neb. 799, 42 N. W. 2d 861. See section 25-1925, R. R. S. 1943.

The parties were married August 23, 1919, at Denver, Colorado. They established their home in Deuel County, Nebraska, in September 1920. They lived together as husband and wife until about Christmas of 1947. To the marriage two children were born, both of which are of age and married.

The plaintiff's cause of action was based upon extreme cruelty. The petition alleged certain specific acts constituting extreme cruelty which were denied by the defendant's answer, and his cross-petition charged the plaintiff with extreme cruelty, setting forth certain acts of the plaintiff constituting extreme cruelty. The evidence with reference to the charges so made need not be related, and the sufficiency thereof to award the plaintiff an absolute divorce is not contested in this court by the defendant. A review of the evidence discloses that it was sufficient to warrant the district court in granting the plaintiff a decree of absolute divorce.

The record discloses that at the time the parties were married the plaintiff owned four head of cows which

gave the parties a start in the dairy business. In 1921, the defendant became a bankrupt. Thereafter, by borrowing money from the First National Bank at Julesburg, Colorado, other cattle were purchased, and the plaintiff started a dairy business which developed to some considerable extent. She testified that she conducted this business for a period of some 15 or 16 years, and applied the money she received from the business to the household expenses, the purchase of machinery, a truck, oil, and all necessary equipment to carry on the dairy business and the business of farming, and paid out in that course of time an amount of $29,000. The defendant was engaged in farming, and at the time of the trial was farming 600 acres most of which was wheat land.

On September 24, 1945, the plaintiff and defendant entered into a written agreement to the effect that differences had arisen between them as to their marital relations and concerning their property interests, and agreed upon a future conduct of their business interests until such time as they could settle the matters between them. This contract related that the real and personal property then owned and operated by the parties, or either of them, as a farm and dairy was the joint property of the parties, having been earned, acquired, and accumulated as the result of their joint efforts and contributions during their married life. Further, they desired to carry on the business, maintain and operate the business, until their son was discharged from the military service, at which time the intention of the parties was to arrange for the son to operate the property or a portion thereof. Further, that neither party was to incur obligations or indebtedness exceeding the aggregate sum of $500 without the consent of the other, and the income from the property over and above operating and living expenses would be used to pay any indebtedness owing by either party.

The plaintiff testified that the reason for the con-

tract was that the defendant was taking money from the business and spending it wrongfully and extravagantly. He also constantly threatened to have a sale and dispose of the business and all their personal property.

In 1946, the parties harvested a large crop of wheat. The exact number of bushels is not shown by the record. The defendant estimated the crop as 25,000 bushels, but the plaintiff knew of some 12,000 bushels which she claimed the defendant sold and made no accounting of the proceeds. At this point it may be well to state that in this action she requests no accounting. Differences arose between the parties with reference to this matter and on September 3, 1947, there was a public sale held by them to dispose of their cattle, equipment for farming and otherwise, and household goods. After deducting expenses of the sale and items bid in by the defendant there was a net of $23,968.25, as testified to by the plaintiff, from which there was deducted notes owing to the bank by the defendant in the amount of $7,510.83, of which the plaintiff claims to have had no knowledge, but contends that she suffered a personal loss by such notes being deducted from the net proceeds of the sale. She was unable to ascertain the indebtedness of the defendant to the bank. She contended it violated their formal agreement as to the operation and management of the business. The remaining amount was divided into two equal parts, the plaintiff receiving one-half of such proceeds and the defendant the other one-half. This constituted a property settlement of the personal property satisfactory to both parties.

The parties each own an undivided one-half interest in 320 acres of good farm land. The district court decreed that they owned such land as tenants in common, each holding an undivided one-half interest therein. The parties are satisfied with this arrangement and division of the 320 acres.

With reference to the 40 acres which has the improve-

ments on it and is involved in this cause, this was purchased from one Bessie Johnson for $2,000. The plaintiff paid $500 cash, borrowed $500 from her son Harold, and $500 from the First National Bank of Julesburg, Colorado, and the defendant paid $500. The plaintiff testified this money came from the two-thirds interest that she and her husband had in the dairy business, the other third having been given to a daughter during the absence of the son in the military service.

The defendant's testimony with reference to this 40 acres is that at the time it was purchased they had $2,400 worth of improvements on the place, and the $2,000 was paid in addition to that. The $500 which he paid was from the sale of some lots that he owned in Julesburg, Colorado.

The other 40 acres constituting the homestead was bought at a partition sale, the plaintiff paying in the amount of $750, and the defendant testified he paid one-half thereof to the plaintiff for his interest in the 40 acres.

The plaintiff, in 1945, was desirous of improving the house and asked the defendant if he was willing that it be done. Plaintiff testified that he stated his willingness. The defendant denies that he did, except that he agreed that the plaintiff might fix up the basement. However, the plaintiff spent $4,157.38 in improving the house, which was paid from her own separate funds. In addition she did some sanding, painting, and finishing in the house. This was after the divorce action was started. Before this work was done the value of the 80 acres was estimated at $3,000. There was approximately $6,500 invested in the 80 acres at the time this divorce action was started.

There is contention that the 80 acres in question is rented to the son of the parties together with other farm land, and that he lives on this land and the plaintiff does not, and it is not her home. While the plaintiff has on occasions been away from her home, principally due

to her health, the evidence discloses that it is the only home she has, and she has lived in it for a period of 28 years or more.

The evidence discloses that throughout the period of the married life of the parties this plaintiff stayed at home and continued to work, and did work on many occasions when the defendant was absent on hunting or fishing trips for some weeks at a time. She kept strict account of the income of the business and the expenditures incident to the business, did the housework, took care of the children, and performed all the duties incident to that of a farm wife. From the standpoint of finances, she had more than considerable to do with the financial success of the parties.

In determining the question of the division of the property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of the divorce, its value at that time, its income-producing capacity if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto; and, from all the relevant facts and circumstances relating thereto, determine the rights of the parties and make an award that is equitable and just. See Nickerson v. Nickerson, *supra*.

While the division of the real estate as decreed by the district court is not favored in attempting to arrive at an equitable distribution of the property of the parties, we must conclude that such decree with respect thereto meets the satisfaction of the parties with the exception of the 80 acres of land which the plain-

tiff considers her home. This is especially true in view of the fact that no value is placed upon the real estate owned by the parties, except the 80 acres here involved.

From an analysis of the evidence it is clear that the parties arrived at a complete settlement of their business transactions and real property interests except the real estate involved in this appeal. From a review of the record we conclude the decree of the trial court should be modified to the extent that the plaintiff be awarded the entire interest in the 80 acres of real estate heretofore described and in controversy in this appeal, and in addition, the plaintiff be awarded the household furniture, goods, and equipment used therein. The plaintiff is also allowed an attorney's fee of $250 for services of her attorney in this court.

AFFIRMED AS MODIFIED.